Charles W. BUTLER,
Plaintiff–Appellant,

v.

Richard THORNBURGH, In his official capacity as Attorney General of the United States, et al., Defendants–Appellees.

No. 89–3337.

United States Court of Appeals,
Fifth Circuit.

May 15, 1990.

George W. Chuzi, Kalijarvi, Chuzi & Stetina, Washington, D.C., Winthrop G. Gardner, New Orleans, La., for plaintiff-appellant.

Glenn K. Schreiber, Asst. U.S. Atty., John Volz, U.S. Atty., New Orleans, La., for defendants-appellees.

Before GEE, GARZA, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

This appeal comes to us from the district court's denial of relief to an FBI agent who was discharged from his employment with the Bureau because of incidents connected with a drinking problem. Appellant Butler invokes the Rehabilitation Act of 1973, 29 U.S.C. Sections 701–794, and the operating procedures of the FBI in his challenge to the decision of the district court. For the reasons set out below, we must hold that Mr. Butler's claims fail and we, therefore, affirm the decision of the district court.

### Statement of the Facts

Appellant Charles W. Butler was an employee of the Federal Bureau of Investigation from 1970 until he was dismissed in November 1987. Butler was appointed a Special Agent of the FBI in 1973, and he served in that capacity for 14 years. As a special agent, Butler was required to conduct surveillances, undertake investigations, testify in federal court, make arrests, collect evidence, conduct counter-intelligence activities, carry and use a firearm, use physical force and drive an automobile.

Butler is an alcoholic, though his problem did not affect his employment until he had been a Special Agent for five years. In May 1978, Butler picked a fight with a crippled gas station attendant in Washington, D.C., while under the influence of alcohol. Later, a similar incident occurred, in which Butler physically injured a security guard in a fight that he provoked. While on probation as a result of that incident, Butler sought and obtained treatment for his condition, remaining incident-free until 1983. In that year, while under the influence of alcohol, he drove a Bureau vehicle into a wall in Louisiana, wrecking both it and the wall. Reprimanded, again placed on probation, and warned that any future incident could and would result in his discharge, Butler again sought treatment.

Butler's condition caused no further trouble until February 1987, when he again became intoxicated and forgot where he had left his Bureau vehicle. (It was recovered a few days later.) For the first time he voluntarily checked himself into an inpatient alcohol rehabilitation facility. When he had completed this program, the FBI was notified that Butler's "prognosis will be excellent for recovery and prolonged abstinence." Butler has abstained from drinking since the February 1987 incident.

In June 1987, the FBI notified Butler that his dismissal was being considered because of the repeated alcohol-related incidents. Butler responded by requesting reconsideration because of his favorable prognosis and abstinence. In November 1987, however, the FBI dismissed him.

Butler exhausted his administrative remedies and filed suit in federal district court, alleging that his firing had violated his rights under the Rehabilitation Act of 1973, under the Fifth Amendment's guarantee of due process, and under the FBI's own regulations. The district court dismissed Butler's claim under the Rehabilitation Act and granted summary judgment for the FBI on his constitutional and regulatory claims. Butler appeals from the disposition of the district court as to the Rehabilitation Act and the regulatory claims.

The central question raised in his appeal is whether the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sections 701–794 (hereinafter the Rehabilitation Act), reaches out to protect an alcoholic FBI agent from discharge. Resolution of this question depends on parsing the complex statutory and regulatory framework that governs the rights and duties of federal employers toward their employees. Of particular intricacy in this case is the interplay between the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (the Hughes Act) and the Rehabilitation Act.

### The Hughes Act

The Hughes Act provides in pertinent part as follows:

(b) Prior alcohol abuse no bar to federal employment; exceptions

(1) No person may be denied or deprived of Federal Civilian employment or a Federal professional or other license or right solely on the ground of *prior* alcohol abuse or *prior* alcoholism.

(2) *This subsection shall not apply to employment*

(A) *in the* Central Intelligence Agency, the *Federal Bureau of Investigation*, the National Security Agency, or any other department or agency of the Federal Government designated for purposes of national security by the President....

42 U.S.C. § 290dd–1(b) (emphasis added).

A considerable wrangle emerges in the briefs over the weight to be attached to the word "prior" as used in the statutory formula. For Butler, "prior" assumes totemistic value. As a tool of statutory construction, Butler looks to the ordinary meaning of the word and concludes, not surprisingly, that "prior" cannot include his alcohol abuse because such was current at the time of his termination. Thus, Butler contends, the Hughes Act has no application to him, given the fact that it addresses only discrimination arising out of prior alcohol abuse, the fact that he makes no claim under it and, therefore, the statutory exemption for the F.B.I. is irrelevant.

The government responds by arguing that, notwithstanding "prior", the true intent of the Congress was to cover *current* abuse of alcohol. According to the House Report, No. 91–1663, adopted by both houses to accompany the Hughes Act,

The legislation gives a clear mandate to the Civil Service Commission to develop policies and services for the prevention and treatment of alcohol abuse and alcoholism among Federal civilian employees which are consistent with the purposes and intent of the Act. *The alcoholic employee*, like any other employee suffering from a disease, *will now be provided with an opportunity for treatment instead of being summarily discharged. The committee has, however, provided reasonable exceptions in the case of certain sensitive agencies or positions within agencies.*

1970 U.S.Code Cong. & Admin.News 5719, 5727–5728 (emphasis added).

This language leads to the dismaying conclusion that, indeed, Congress did not say what it meant or mean what it said in its use of "prior" in the text of the Section. Be that as it may, however, it is quite clear that Congress never intended the Hughes Act to protect *all* current alcohol abusers. In Section 290dd–1(c) we find the unequivocal statement that "[t]his sec-

tion shall not be construed to prohibit the dismissal from employment of a Federal civilian employee who cannot properly function in his employment." We may safely conclude, therefore, that the Hughes Act embraces both prior alcohol abusers, and current abusers who are functional in their jobs, but not current dysfunctional abusers. Clearly the recurring incidents that precipitated Charles Butler's termination reveal him to have been a current dysfunctional alcoholic at the time of his firing. Consequently, the Hughes Act ordains no protection for the kind of problem that Mr. Butler exhibited. Because Mr. Butler could not be included in the definitional sweep of the Act, we have no need to resort to the "sensitive agencies" exception to drop him from its protections. If we did so, however, we could scarcely avoid concluding that current alcoholism is *a fortiori* of prior alcoholism and therefore that the sensitive agency exception covers both.

We fully recognize the fact that our adopting the government's reasoning on this point does not affect the outcome that, under either view of the Hughes Act—Mr. Butler's or the government's—it affords no protection to Mr. Butler. Nor does it necessarily follow that, because Mr. Butler finds no solace in the Hughes Act, his claim under the Rehabilitation Act must also fail. The parties' quarrel over how we should view the Hughes Act is really a shadow play on the real issue before us, i.e., the scope of protection afforded Mr. Butler under the Rehabilitation Act. Butler urges us to construe the Rehabilitation Act as a higher state in the evolution of federal protection for alcoholic employees, surpassing the initial bare bones attempt of the Hughes Act.[1] The government, on the other hand, maintains that the Hughes Act trenches on any broad interpretation we might make of the Rehabilitation Act and that Congress, in enacting the Rehabilitation Act, saw itself as amplifying and not as extending the Hughes Act.

We turn now to consideration of the Rehabilitation Act.

### The Rehabilitation Act

The Rehabilitation Act of 1973, 29 U.S.C. Sections 701–794, prohibits the federal government from engaging in employment discrimination against handicapped persons. 29 U.S.C. § 791(b). The Act also forbids discrimination by federal contractors (Section 793) and federal grantees (Section 794). Alcoholism is arguably a handicapping condition for purposes of the handicap discrimination provisions of the Act. The Attorney General has so concluded, 43 Op.Atty.Gen. No. 12 (1977), as has the federal agency charged with carrying out the Act. *See* opinion of the Merit Systems Protection Board in *Ruzek v. General Services Administration*, 7 MSPB 307, 7 M.S.P.R. 437 (1981). Some federal courts have held likewise. *Whitlock v. Donovan*, 598 F.Supp. 126, 129 (D.D.C.1984), *aff'd without opinion*, 790 F.2d 964 (1986); *Crewe v. United States Office of Personnel Management*, 834 F.2d 140, 141 (8th Cir.1987). The broadranging language of Section 791(b), upon which we will chiefly focus today, imposes on federal agencies a

---

1. We note in passing that at least one court has divined a "firm choice" requirement on the part of the federal government from the statutory history of the Hughes Act. In construing Section 290dd–1(c), which provides that "[t]his section shall not be construed to prohibit the dismissal from employment of a Federal civilian employee who cannot properly function in his employment", a court has held that "the legislative history indicates that dismissal was intended to apply only to employees who refused treatment altogether or who had repeatedly failed in treatment." *Whitlock v. Donovan*, 598 F.Supp. 126 at 131 (D.D.C.1984) *aff'd without opinion*, 790 F.2d 964 (1986). We find it necessary to point out, however, that the legislative history that the *Whitlock* court expressly relied upon derives from the Senate version of the bill and from its related report. 598 F.Supp. at 131, n. 8. The final House version of the bill, however, expressly deleted any reference to an alcoholic employee's failure to accept appropriate treatment. 116 Cong.Rec. at 42539. It was the House version that was promulgated into law. (The Senate bill was passed in lieu of the House bill after substituting for its language the text of the House bill). 1970 U.S.Code Cong. & Admin. News 5719. We respectfully raise the possibility, without so holding, that the federal courts in the District of Columbia have misapprehended the law and incorrectly read a firm choice provision into the Hughes Act for alcoholic employees.

duty toward handicapped individuals (employees and applicants).[2] Section 794 declares a policy of non-discrimination toward "otherwise qualified" handicapped individuals on the part of the federal government or federal grantees.[3]

Assuming, as we do for purposes of this appeal, that alcoholism is within the scope of the Act's provisions regarding "handicapped" employees, simply commences our inquiry today. Much confusion has bedeviled judicial interpretation of the Rehabilitation Act. Here, as with the Hughes Act, courts have had to grapple with nebulous statutory history and to cuff carelessly drafted matter into shape. For Mr. Butler's dispute with the FBI, the problems stem from the 1978 Amendments to the Act.

In 1978, Congress embarked on an extensive program for federal employment of the handicapped. To this end, it amended Section 501 (codified as Section 791) by Section 505(a)(1) to establish a private right of action subject to the same procedural limitations as are set forth in Title VII of the Civil Rights Act in favor of claimants suing the federal government or its agencies. This private right of action resembles that already in place for claimants suing federal grantees under old Section 504 (codified as Section 794). 29 U.S.C. § 794a(a)(1). Congress also broadened the ban on handicap discrimination imposed on federal grantees by old Section 504 to cover the federal government. 29 U.S.C. § 794(a). The upshot of these amendments was that codified Sections 791 and 794 partially overlapped, affording a claimant a dual mode of action against the federal government under Section 791's preference provisions or Section 794's anti-discrimination ones. *See Prewitt v. United States*

*Postal Service*, 662 F.2d 292, 304 (5th Cir. 1981).

Mr. Butler chose to sue the FBI under Section 791(b), a choice foreclosed to him, according to the FBI, by another 1978 amendment to the Rehabilitation Act. That amendment excluded from the definition of "handicapped individual" current alcohol and drug abusers, specifically providing as follows:

> For purposes of Sections 793 and 794 of this title as such sections relate to employment, such term does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(8)(B).

On the strength of *Prewitt*, the FBI trenchantly argues that, consonant with the Hughes Act's exclusion of currently dysfunctional alcoholics, the exclusion for current abusers of alcohol and drugs specifically applicable to Sections 793 and 794 must be extended also to Section 791(b), thus barring Butler's claim against it. We need not place our decision upon so broad a basis, however, and we leave that argument for another day.

Section 791(b) forbids the federal government from using a person's handicap to deny him employment where the person

> with or without reasonable accommodation, *can perform the essential functions of the position in question without endangering the health and*

**2.** Section 791(b) provides in pertinent part:
   Each department, agency, and instrumentality ... in the executive branch shall ... submit to the Commission ... an affirmative action program plan for the hiring, placement, and advancement of individuals with handicaps in such department, agency, or instrumentality. Such plan shall include a description of the extent to which and methods whereby the special needs of handicapped employees are being met ...

**3.** Section 794 provides in pertinent part:

No otherwise qualified individual with handicaps in the United States as defined in Section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

*safety of the individual or others and who, depending upon the type of appointing authority being used:* (1) Meets the experience and/or education requirements (which may include passing a written test) of the position in question, or (2) meets the criteria for appointment under one of the special appointing authorities for handicapped persons.

29 C.F.R. § 1613.702(f) (emphasis ours).

■ The FBI, citing this provision, contends that, due to his recurrent bouts with alcohol, Butler was unable to "perform the essential functions of the position in question without endangering the health and safety of the individual or others...." The FBI continues that, being an active, dysfunctional alcoholic is not compatible with the safekeeping of either property or of lives, when that alcoholic is required to carry a badge and gun, drive a vehicle, all with only two hours' notice, twenty-four hours a day, seven days a week. Clearly, Butler's four incidents of drunken misconduct constitute the reason for the FBI's decision to terminate him.

We find the FBI's argument here entirely persuasive. Accordingly, and whether or not Butler comes within the scope of the protections of the Rehabilitation Act, his position as a law enforcement officer means that his alcoholic incidents furnish a sufficient basis for his discharge because he cannot carry on his work safely. *See* 29 C.F.R. § 1613.702(f). Butler has not cited a single case to contradict the government's position on this. Moreover, the precedent that he relies on supports the government's view here. In *Nisperos v. Buck*, 720 F.Supp. 1424 (N.D.Cal.1989) the court held that Nisperos (an INS general attorney) could recover under the Rehabilitation Act because a drug-free history was not an essential element of an INS lawyer's function. 720 F.Supp. at 1429. The court arrived at this conclusion by distinguishing a lawyer's job from that of a police officer. Citing *Copeland v. Philadelphia Police Dept.*, 840 F.2d 1139 (3rd Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), the Court stated:

In *Copeland,* the court held that accommodating within the ranks of the police department an officer who used illegal drugs would constitute a substantial modification of the essential functions of the department and cast doubt upon the integrity of the police force. 840 F.2d at 1140. However defendant here has not demonstrated that the position of an INS general attorney is analogous to a police officer. A police officer is on the front line of law enforcement, whereas Nisperos had no responsibilities for the investigation, apprehension, or detention of individuals suspected of criminal offenses.

720 F.Supp. at 1430–31 (footnote omitted).

Likewise, an FBI special agent stands in the front line of law enforcement; and alcohol dependency would seriously compromise his ability to function and could well pose just such a threat to the safety of others as is proscribed by regulation. 29 C.F.R. § 1613.702(f). Thus, the Rehabilitation Act offers no protection to Butler because he has shown himself incapable of safely performing his duties, even the simplest of which—carrying a loaded firearm—is a demanding and dangerous one.

Our conclusion that the regulations promulgated under the Rehabilitation Act preclude recovery for Mr. Butler disposes of all but one of the remaining issues on appeal. That is Mr. Butler's claim that the FBI violated its own policies and procedures by dismissing him without first offering him a "firm choice."

### The FBI's policies and procedures

■ Mr. Butler maintains that under the internal rules of the FBI he was entitled to an opportunity for a "firm choice" before being dismissed.

The issue here is whether the FBI regulations are mandatory or precatory. The FBI contends that the terms of its policy for alcoholics are precatory and thus without any binding legal effect. The FBI relies heavily on *Judd v. Billington*, 863 F.2d 103 (D.C.Cir.1988) a case in which the Li-

brary of Congress disregarded its own internal regulations in discharging an alcoholic employee. Those regulations, like the FBI's regulations, had been adopted from unpublished guidelines promulgated by the Office of Personnel Management and were without legal effect because neither was published in the Federal Registry nor codified in the Code of Federal Regulations. Further, they were entirely precatory because they described themselves as intended for "guidance"; and even the "firm choice" provision was couched in terms of "superiors should" not "shall" proffer a firm choice. 863 F.2d at 106–07. The FBI "firm choice" provision is couched in precisely the same precatory language.[4] We concur fully in the reasoning of Judge Schwartz in the trial court, where he states:

> The evidence indicates the FBI's statements regarding its Alcoholism Program do not have the force with which plaintiff attempts to imbue them. The language used throughout regarding implementation of the program is precatory.[5] However, FBI policy requires that employees should never cause themselves to be mentally or physically unfit for duty.[6] The FBI rules also provide that normal rehabilitation procedures need not be followed in situations where actions or activities are present which constitute employee misconduct.[7]

Moreover, even if the FBI policies and procedures were mandatory, they would not have afforded Butler a firm choice because he was not a "self-referral" and only "self-referrals" are accorded any form of job security.[8]

For the reasons set forth above we hold that Mr. Butler's case fails under the Hughes Act, under the Rehabilitation Act and its regulations, and under the FBI's own internal guidelines. Accordingly, the decision of the district court is

AFFIRMED.

---

**4.** In its Manual of Administrative Operations and Procedures (MAOP), Part I, Section 15 at subpart 3.2.1(3) the FBI states: *"Should* the employee refuse assistance in the face of deteriorating or unsatisfactory performance, employee *should* be given a firm choice between accepting assistance ... or accepting the consequences provided for unsatisfactory performance...." (emphasis ours.)

**5.** FBI MAOP, Part I, § 15–3.2.1(3).

**6.** FBI MAOP, Part I, § 15–3.2(2).

**7.** FBI MAOP, Part I, § 15–3.3(3).

**8.** FBI MAOP, Part I, § 15–3.3(4).