**Robert D. WILBER, Plaintiff,**

v.

**Nicholas F. BRADY, Secretary of
the Treasury, Defendant.**

**Civ. A. No. 90–2010.**

United States District Court,
District of Columbia.

Jan. 21, 1992.

Michael Riselli, Riselli & Pressler, Washington, D.C., for plaintiff.

John C. Martin, Asst. U.S. Atty., Washington, D.C., for defendant.

**MEMORANDUM OPINION**

JOHN H. PRATT, District Judge.

Before the Court are cross-motions for summary judgment and the parties' oppositions to those motions.

This case arose out of the tragic events of August 26, 1987. The undisputed facts show that at approximately 4:45 p.m. on that date, plaintiff, a Criminal Investigator (Special Agent) with the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"), left work and drove to a bar in a government owned vehicle ("GOV").[1] He was joined by several individuals, including his supervisor. At approximately 10:00 p.m., plaintiff was offered a ride home, but refused. Plaintiff left the bar, driving the GOV, at approximately 10:15 p.m. At approximately 11:17 p.m., while traveling in the wrong direction on an interstate highway, he collided with another vehicle. The collision resulted in the death of Kadee Wiechman, a 2–year–old girl who was a passenger in the other vehicle.[2] A sobriety test was administered to plaintiff by the Council Bluffs, Iowa Police Department. The plaintiff failed the test with a 0.207 blood alcohol content. Under Iowa law, a 0.10 blood alcohol content is considered to be the point of impairment for a motor vehicle operator.

Following the accident, plaintiff was arrested and charged with operating a vehicle while intoxicated and traveling the wrong way on an interstate highway, misdemeanors under Iowa law. These charges were later amended to include a felony charge of vehicular homicide. Plaintiff eventually pled guilty to the charges of vehicular homicide and driving under the influence of alcohol, and was fined, given a suspended sentence, placed on probation, required to perform community service, and had his driver's license suspended.

---

1. Because of plaintiff's duties as a Special Agent, which required him to be "on call" and available at any time to respond to emergencies, the ATF had authorized plaintiff to use his GOV for home to work travel.

2. In addition, Kadee's mother, Anita Wiechman, was seriously injured and her automobile totally destroyed. Plaintiff was not injured in the collision, and the GOV sustained $2,000 worth of damage.

ATF's Office of Internal Affairs investigated plaintiff's conduct relating to the August 26, 1987 accident. It completed its investigation on September 30, 1987 and proposed suspending plaintiff indefinitely. Plaintiff, in a letter from his attorney to Floyd Truman, Special Agent in Charge Kansas City District, responded to the proposed suspension on November 5, 1987. Truman then issued to plaintiff a memorandum entitled "Proposed Removal" on January 8, 1988. ATF proposed to remove plaintiff from his position effective April 8, 1988 on charges of (1) misuse of a GOV; (2) conduct prejudicial to the government; [3] and (3) revocation of his driver's license. Plaintiff, in a letter from his attorney, presented his reply to Daniel Hartnett, Deputy Director Law Enforcement and the deciding official, on February 8, 1988. Plaintiff also presented an oral reply to Mr. Hartnett on February 10, 1988. On April 1, 1988, Mr. Hartnett issued plaintiff a memorandum entitled "Decision to Remove." The decision to remove was based on the three factors set out above.

Plaintiff appealed the ATF's decision to remove him to the Merit Systems Protection Board ("MSPB"). An MSPB Administrative Judge ("AJ") mitigated ATF's removal decision to a 30–day suspension. Administrative Record ("AR") at 1429. ATF petitioned for review with the full Board of the AJ's initial decision. AR at 1448. The MSPB affirmed the agency action and sustained plaintiff's removal. *Wilber v. Department of the Treasury*, 42 M.S.P.R. 582 (1989). Plaintiff then petitioned for review of the final MSPB decision by the Equal Employment Opportunity Commission ("EEOC"). AR at 1504. On July 27, 1990, the EEOC issued its decision which affirmed the final MSPB decision. AR at 1509. Plaintiff then filed a complaint for judicial review with this Court.

Plaintiff asserts that he is an alcoholic.[4] He seeks protection under the Rehabilitation Act of 1973 (the "Rehabilitation Act" or the "Act"), as amended, 29 U.S.C. §§ 791, *et seq.* Plaintiff claims that he meets the requirements of the Act (*i.e.*, that he is an "otherwise qualified handicapped" individual as defined by § 794 of the Act and the governing EEOC regulations, 29 C.F.R. § 1613.701(b) [5] ), and that defendant was thus required to retain him with reasonable accommodation for his handicap rather than remove him. Defendant argues that plaintiff is not an otherwise qualified handicapped person and that plaintiff's misconduct disqualified plaintiff from being able to continue his employment as an ATF Special Agent.

The MSPB's decision in *Hougens v. United States Postal Service*, 38 M.S.P.R. 135 (1988), is central to this case because defendant relies upon it in making his misconduct argument, and both the MSPB and EEOC relied upon it in sustaining the agency action. *Wilber*, 42 M.S.P.R. at 588 ("We find that appellant's misconduct in this case ... is disqualifying, egregious misconduct as discussed in *Hougens*."); AR at 1518–19. Plaintiff argues that *Hougens* "is an incorrect and unsupported interpre-

---

3. Specifically, the prejudicial conduct consisted of (1) pleading guilty to the commission of a felony, and (2) causing adverse publicity to the agency as a result of his conduct. There was wide-spread publicity adverse to ATF generated by plaintiff's accident. ATF had numerous Congressional inquiries, and Mothers Against Drunk Drivers (MADD) became involved in the publicity surrounding his accident.

4. Defendant does not admit that plaintiff is an alcoholic, Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 13 n. 4, and, indeed, proffers evidence which might tend to suggest that he is not. Defendant's Statement of Material Facts as to Which There Is No Genuine Issue at ¶¶ 12–15. Plaintiff's motion for summary judgment, there-

fore, must be denied as this dispute constitutes a "genuine issue as to [a] material fact" precluding summary judgment under Fed.R.Civ.P. 56. For purposes of considering defendant's motion for summary judgment, plaintiff's assertion that he suffers from the handicap of alcoholism will be accepted as true.

5. The regulation states in pertinent part that a qualified handicapped person

means with respect to employment, a person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others....

29 C.F.R. § 1613.701(b).

tation of the Rehabilitation Act." Plaintiff's Memorandum of Points and Authorities in Support of His Opposition to Defendant's Motion for Summary Judgment and Cross–Motion for Summary Judgment ("Plaintiff's Opposition") at 6. Whether or not *Hougens* is good law must therefore be determined at the outset.

The petitioner in *Hougens* was a postal inspector who was proposed to be removed from his position based on charges of off-duty misconduct. The agency maintained that Hougens had recklessly endangered the lives of others by pointing his .25 caliber Beretta automatic pistol at a group of four unarmed men as he left a bar and firing in the direction of one of them who was running away. 38 M.S.P.R. at 139. The agency also charged Hougens with carrying the gun in violation of the agency's firearms policy and without a state or local firearms permit. *Id.* Because of Hougens' alcoholism, he was not removed, but rather accommodated by demoting him to a position where he would not have to carry a firearm. *Id.* On appeal of the demotion, an administrative judge found that Hougens was a qualified handicapped individual whose demotion did not constitute reasonable accommodation under the Rehabilitation Act. *Id.* The agency petitioned the MSPB for review.

The MSPB overturned the administrative judge's decision. It concluded that

> there are certain acts of misconduct which, when committed by an employee who is an alcoholic or drug addict, take that employee outside the scope of the protecting legislation because misconduct renders that person not a "qualified" handicapped individual.

*Id.* at 142. The MSPB referred to several federal court decisions in making this determination. We will now review these cases and other precedent to determine if this holding is supported.[6]

One of the cases discussed in the *Hougens* opinion is from this jurisdiction and

appears to be directly on point. In *Richardson v. United States Postal Service*, 613 F.Supp. 1213 (D.D.C.1985) (Gesell, J.), a long-time employee of the postal service challenged his discharge claiming handicap discrimination. Plaintiff was suspended after being charged with assault with intent to kill. *Id.* at 1214. After several months of incarceration when he was diagnosed as having a deep depression with paranoid tendency and alcoholism, he pled guilty to an assault and weapon charge and was thereafter terminated. *Id.* After unsuccessfully pursuing his administrative remedies, he filed suit in this District Court claiming, *inter alia*, that his discharge violated the Rehabilitation Act.

Judge Gesell held that plaintiff's discharge did not violate the Rehabilitation Act because he "was discharged for his criminal conduct, not because of alcoholism or poor job performance due to alcohol." *Id.* at 1215. The Act, he continued

> does not prohibit an employer from discharging an employee for improper off-duty conduct when the reason for the discharge is the conduct itself, and not any handicap to which the conduct may be related. The Act does not create a duty to accommodate an alcoholic who is not "otherwise qualified," *i.e.* commits an act which standing alone disqualifies him from service and is not entirely a manifestation of alcohol abuse.

*Id.* at 1215–16 (citations omitted). Plaintiff's discharge was thus upheld.

*Richardson* squarely supports *Hougens*. The only difference we can find is the exact wording of the standard: *Richardson* refers to "an act which standing alone disqualifies [the discharged employee] from service," while *Hougens* uses the shorthand "serious misconduct." This is obviously a difference without a distinction.

Indeed, despite his lengthy protestations that *Hougens* is bad law, plaintiff never tries to distinguish nor even addresses the *Richardson* decision, which is clearly both

---

**6.** No court has yet passed judgment on whether or not *Hougens* was correctly decided. The case was appealed to federal court, but the appeal was dismissed on procedural grounds. *Hougens*

*v. United States Postal Service*, No. 88–8186, 1989 WL 73767, 1989 U.S.Dist. LEXIS 7431 (E.D.Pa. June 30, 1989), *aff'd*, 898 F.2d 141 (3d Cir.1990).

good law in this jurisdiction and directly on point.

*Hougens* is also supported by other decisions. The Third Circuit recognized that certain types of misconduct (in that case, drug use) would disqualify a police officer from protection under the Rehabilitation Act. *Copeland v. Philadelphia Police Department*, 840 F.2d 1139, 1148–49 (3d Cir. 1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989). In addition, the Fifth Circuit held that several alcoholic incidents furnish a sufficient basis for the discharge of a Special Agent of the FBI, notwithstanding the Rehabilitation Act, because he cannot carry on his work safely. *Butler v. Thornburgh*, 900 F.2d 871, 874–76 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990).[7] *See also Spragg v. Campbell*, 466 F.Supp. 658 (D.S.D.1979) (employee's misconduct endangered the safety of others and constituted sufficient reason for discharge).

The outcomes in *Richardson, Hougens,* and the other cases listed above are clearly mandated by a common sense reading of the statute. A disabled individual cannot be "otherwise qualified" for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute. The Rehabilitation Act mandates nondiscrimination against disabled individuals; it does not waive basic prerequisites to service. Engaging in serious criminal acts, like those at issue in *Richardson, Hougens,* and the instant case, could disqualify anyone, regardless of ability, from continuing to serve the federal government. We must note that none of the cases cited to by plaintiff in support of his claim that the Rehabilitation Act bars his discharge are on point because in none of them did the

plaintiff engage in the type of serious misconduct at issue here. *See* Plaintiff's Opposition at 9–11, 16–17.

The Rehabilitation Act is designed to put individuals with disabilities on equal footing with non-disabled people in regards to the hiring, promotion, and discharge decisions of the federal government and its grantees. It is not designed to insulate them from disciplinary actions which would be taken against any employee regardless of his status.

This is a sad episode. It is a shame that it took Kadee Wiechman's death to force Robert Wilber to come to terms with his drinking problem. But it cannot be doubted by any reasonable viewer of these facts that Mr. Wilber was discharged in this case because he killed a young child, not because he might have been an alcoholic. The law of this Circuit (and the law of the MSPB and the other courts which have ruled on the issue) is clear that those who commit serious misconduct will not find refuge in the Rehabilitation Act. This outcome does not, as plaintiff asserts, read the word "rehabilitation" out of the Act. It merely recognizes that the Act is designed to help rehabilitate those who have not already disqualified themselves through their own misconduct. Accordingly, plaintiff's claim will be dismissed.

---

7. Plaintiff urges that *Butler* was wrongly decided, and that we should follow the law of this Circuit even if it conflicts with *Butler*. Plaintiff's Opposition at 15. Plaintiff, however, misstates what the law of this Circuit is. He asserts that *Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984) (Gesell, J.), *aff'd sub nom. Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir.1986), is controlling in this case. Plaintiff's Opposition at 15. *Whitlock*, however, merely states the general rule of accommodation for alcoholic employees and is not nearly so on point as *Richardson*, which plaintiff conveniently ignores. In addition, it would be difficult for plaintiff to assert that *Whitlock* and *Richardson* conflict with one another since Judge Gesell wrote both opinions within just a few months. *Whitlock* merely states the general rule, while *Richardson* states the serious misconduct exception. The instant case clearly falls within the *Richardson* exception.