Jose C. MAES, Plaintiff,

v.

William J. HENDERSON, Postmaster General, United States Postal Service, Defendant.

No. CV–N–97–00597–ECR(RAM).

United States District Court, D. Nevada.

Jan. 27, 1999.

Gary M. Pakele, Reno, NV, for plaintiff.

Kathryn El Landreth, U.S. Attorney by Shirley Smith, Asst. U.S. Atty., Reno, NV, for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff Jose C. Maes brings this action against William J. Henderson, Postmaster General of the United States. Plaintiff claims that in demoting him, the Postal Service violated the Rehabilitation Act, 29 U.S.C. §§ 791–796; Plaintiff seeks reinstatement to his former position as well as damages. On June 4, 1998, Defendant filed a motion for summary judgment (# 15), and on August 6, 1998, Plaintiff filed an opposition to the motion (# 19). Defendant has not filed a reply. For the reasons set forth below, the motion for summary judgment (# 15) will be granted.

## FACTS

Plaintiff served as Postmaster for the Minden, Nevada Post Office from 1989 to 1995. In early 1995, one of the employees at the Minden Post Office contacted William. Bennett, Plaintiff's supervisor. That employee alleged that Plaintiff had created a hostile work environment through inappropriate sexual joking and through verbal abuse of his employees. Bennett initiated an investigation, and placed Plaintiff on administrative leave while the investigation continued.

Following the investigation, on May 3, 1995, Bennett issued Plaintiff a notice of proposed removal, which set out specific charges in support of the proposal to terminate Plaintiff's employment with the Post Office. Mot.Summ.J., Ex. 3. Plaintiff responded to the charges through his representative, Mr. Chacon, who met with Mr. Richard Napoli, Manager of Post Office Operations on May 11, 1995. At that meeting, Mr. Chacon asserted that Plaintiff had not committed the acts charged. Mr. Chacon also informed Mr. Napoli that Plaintiff was being treated for depression, and asked that Plaintiff not be terminated. Mot.Summ.J., Ex. 1 (Tr. of Merit Systems Protection Board Hr'g, May 16 and 17, 1996), 175:7–17.

On May 22, 1995 Dr. Jacqueline Greedy sent a letter to Mr. Mike Dornbush, Postal Service District Manager, informing him that Plaintiff had been diagnosed with Dysthymic Depression and had suffered a Major Depressive Episode. Dr. Greedy also informed Mr. Dornbush that Plaintiff had been under her care since May 2, 1995, and that Dr. Curtis Kaufmann was treating Plaintiff with antidepressant medication. Mot.Summ.J., Ex. 10.

On May 25, 1995, Mr. Napoli issued Plaintiff a letter of decision. The letter informed Plaintiff that Mr. Napoli had decided to reduce Plaintiff's grade from Postmaster to PTF Letter Carrier, effective June 10, 1995. Mot.Summ.J., Ex. 2. The letter also stated that Mr. Napoli had decided that demotion, rather than removal, was the appropriate agency action, in part due to Plaintiff's "documented medical condition" for which Plaintiff was receiving treatment. *Id.*

Dr. Edward Lynn later diagnosed Plaintiff as suffering from Bipolar Disorder II.[1] It remains unclear whether Plaintiff ever communicated this new diagnosis to the agency. Plaintiff continued to see Dr. Greedy and Dr. Lynn for treatment of his condition. Dr. Greedy cleared Plaintiff to return to work as a letter carrier in January, 1996.

Plaintiff timely appealed the decision of the Postal Service to the Merit Systems Protection Board ("Board"). On May 16, 1996 and May 17, 1996, Administrative Judge Francis Lee conducted a full hearing on the matter. Judge Lee heard testimony from twelve witnesses, including Plaintiff. Representatives from each side had the opportunity to examine or cross-examine each witness. Judge Lee affirmed the agency's action in a written decision dated May 25, 1996. Mot. Summ.J., Ex. 4 (Merit Systems Protection Board Decision). Finding that Plaintiff had committed misconduct and that Plaintiff's comments and behavior had created a hostile work environment in the Minden office, Judge Lee sustained the agency charges against Plaintiff. Judge Lee also found that Plaintiff failed to prove that the demotion constituted discrimination based on disability, since Plaintiff did not show that he was a "qualified handicapped employee". *Id.* at 11. Finally, Judge Lee reviewed the penalty imposed by the agency, and found demotion to be an appropriate penalty, imposed "for such cause as promotes the efficiency of the service." *Id.* at 12.

Plaintiff petitioned the Merit Systems Protection Board for review of the decision; on November 15, 1996, the Board denied Plaintiff's petition for review. Mot.Summ.J., Ex. 9.[2] Plaintiff then appealed the decision to the Equal Employment Opportunity Commission ("EEOC"). The EEOC reviewed the administrative determination that the Postal Service had not discriminated against Plaintiff, and concurred in the finding of no discrimination. Plaintiff now appeals the decision of the Merit Systems Protection Board (the decision of the Administrative Judge) by bringing a claim of discrimination under the Rehabilitation Act.

## DISCUSSION

### A. Jurisdiction

■ The action that Plaintiff brought before the Merit Systems Protection Board challenged the Postal Service's decision to demote him in grade and pay. In that action before the Board, Plaintiff also alleged that disability discrimination formed a basis for the agency's action. Therefore, Plaintiff brought to the Board a case involving both a personnel action normally appealable to the Board and a discrimination claim. Under 5 U.S.C. § 7702(a)(1)(B), the Board had the authority to decide the discrimination claim along with the personnel claim.[3]

---

**1.** Dr. Greedy later concurred in this diagnosis. Tr. Hr'g, 33:22 – 34:2.

**2.** Consequently, Judge Lee's decision became the final Board decision on the matter. *Id.*

**3.** The statute provides, in relevant part:
[I]n the case of any employee ... who
(A) has been affected by an action which the employee ... may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by—
. . .
(iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. § 791),
. . .
the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.

■ Section 7703 of Title 5 of the United States Code provides, in part: "Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." 5 U.S.C. § 7703(a)(1). In Plaintiff's case, the decision of the Board became judicially reviewable upon the decision of the EEOC wherein the Commission concurred with the Board decision. 5 U.S.C. § 7702(b)(5)(A). Review of a case brought before the Board which does not contain any discrimination claim must be pursued in the United States Court of Appeals for the Federal Circuit. § 7703(b)(1). However, for a "mixed case" which contains both an appealable personnel claim and a discrimination claim, "judicial review must be sought in district court under the applicable discrimination statute. Under the mixed case scenario, the district court has jurisdiction to review the lawfulness of the personnel action as well as the discrimination claim." *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir.1993) (citations omitted). *See also* 5 U.S.C. § 7703(b)(2). Because Plaintiff brought a mixed case to the Board for decision, this court has jurisdiction to review the lawfulness of the agency action as well as the discrimination claim.

■ However, Defendant claims that Plaintiff has not appealed the Board decision. Plaintiff strongly contests this, and, in fact, Plaintiff has the better argument here. While he does not explicitly state that he seeks appellate review of the Board decision in his Complaint (# 1), Plaintiff clearly challenges that decision. When stating the nature of the action in the Complaint, Plaintiff characterizes the instant action as one for damages and reinstatement of pay and grade, based on Defendant's improper demotion of Plaintiff. In addition, Plaintiff provides a thorough procedural history of his appeal from the agency decision, Complaint ¶¶ 7–12, and specifically makes the following statement: "The EEOC decision of September 16, 1997, indicated that Plaintiff has the right to file a civil action in the appropriate United States District Court, based on the decision of the U.S. Merit Systems Protection Board." Complaint ¶ 12. Finally, and most strongly, Ninth Circuit precedent inter-

preting § 7703(b)(2) requires that Plaintiff bring an appeal of the Board's decision in federal district court under the relevant discrimination statute. *Washington*, 10 F.3d at 1428. On its face, Plaintiff's Complaint does comply with the requirements of an appeal brought under § 7703(b)(2), as articulated by the Ninth Circuit. Plaintiff does not have to have used particular words and phrases in the Complaint in order to have stated a claim for review of the Board's decision. Defendant's argument for the application of collateral estoppel to the administrative proceedings must therefore fail, since the decision of the Board cannot be viewed as a final order in a separate proceeding.

### B. Standard of Review

Plaintiff has the right to de novo review of his discrimination claim. 5 U.S.C. § 7703(c); *Washington*, 10 F.3d at 1428. The Board decision affirming the personnel action taken by the agency, however, receives more deferential review.

> [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by rule, law, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c). *See also Washington*, 10 F.3d at 1428.

### C. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judg-

ment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a while. *Id.*

## D. Merit Systems Protection Board Decision

■ Because Defendant took the position that Plaintiff had not appealed the Board's decision, Defendant has not moved for summary judgment on this issue. However, Plaintiff has asked the court to grant summary judgment in his favor on this issue, and does not argue that any genuine issues of material fact remain in dispute. Pl.'s Opp'n to Def.'s Mot.Summ.J. at 13. Summary judgment for a non-moving party can be appropriate, where the record demonstrates no genuine issue of material fact, and the non-moving party should be awarded judgment as a matter of law. *Superior Engineering and Electronics Co., Inc. v. Sanders*, 833 F.2d 823, 825 (9th Cir.1987). We therefore consider the decision of the Merit Systems Protection Board under the standard announced above.

This court has carefully reviewed the transcript of the hearing before Administrative Judge Lee and other documents in the administrative record. The record contains substantial evidence supporting the charges brought against Plaintiff. Plaintiff admitted some of the charges at the hearing. Most significantly, Plaintiff acknowledged that he had created a stressful and difficult work environment. Plaintiff admitted that he had allowed "off-color" joking to go on in the post office and had participated in such joking. Plaintiff also stated that he had he had brought up sexual jokes in the workplace after having been asked to stop, that he had brought alcohol to work as a gift for certain employees, that he had contacted employees at home, and that he had commented on a female employee's weight and attractiveness. The testimony of various Post Office employees substantiated other charges; for example, that Plaintiff had yelled or screamed at various employees, had pushed empty postal equipment at an employee, and had threatened employees. The Administrative Judge's findings identify the specific testimony on which he based his conclusions. Moreover, Plaintiff has not argued that the Administrative Judge's decision does not reflect

the testimony presented. We conclude that substantial evidence supported the decision.

■ It also appears that the Postal Service, the Administrative Judge, and the Board followed all required procedures. Plaintiff received notice of the charges against him and was given a chance to respond to those charges before the agency made the decision to demote him. Plaintiff also received notice of his right to seek a hearing before the Board. Finally, Administrative Judge Lee conducted a two-day hearing on the matter of the agency decision, where Plaintiff's legal representative presented witnesses on his behalf and had the opportunity to cross-examine witnesses for the agency. Neither the agency decision nor the decision of the Board were obtained without the benefit of procedures required by law, rule or regulation.

■ Finally, neither the agency's action nor the decision of the Board affirming that action was arbitrary, capricious, an abuse of discretion or otherwise unlawful. Plaintiff did not commit minor offenses. Demotion to a lower rank within the Postal Service reflects the severity of Plaintiff's misconduct. Indeed, Plaintiff's violation of agency policy might easily have justified termination, first proposed by Plaintiff's immediate supervisor. The agency employee responsible for making the final decision as to Plaintiff's continued employment mitigated the penalty first proposed by reducing Plaintiff in grade. The penalty imposed was not so disproportionate to the offenses committed as to constitute an abuse of discretion. In addition, given employee testimony about the stressful and unpleasant working conditions to which Plaintiff subjected them, the Administrative Judge for the Merit Systems Protection Board reasonably found that the decision to demote Plaintiff would contribute to the efficiency of the service. The employment action and the decision affirming that action should be upheld.

### E. Rehabilitation Act Claims

Plaintiff has articulated two different claims under the Rehabilitation Act.[4] First, Plaintiff argues that the demotion constitutes intentional discrimination based on his mental disability. Second, Plaintiff argues that Defendant failed to accommodate his mental disability. Defendant contends that the Postal Service demoted Plaintiff for his misconduct, not on the basis of his disability.[5] The parties appear to agree on the relevant facts. We therefore turn to a consideration of the legal significance of those facts in light of Plaintiff's two claims.

### 1. Discrimination Based on Disability

■ In order to establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must show the following: 1) he was an otherwise qualified disabled individual under the Act; and 2) he received adverse treatment as a result of his disability. *Buckingham v. United States*, 998 F.2d 735, 739–40 (9th Cir.1993). Plaintiff essentially alleges the following: a) at least in part, his mental illness caused him to behave inappropriately; b) the Postal Service demoted him on the basis of his inappropriate behavior; and therefore, c) the Postal Service demoted him on the basis of his mental disability.

As Defendant points out, however, the Ninth Circuit has rejected this kind of analysis. In *Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir.1995), the Ninth Circuit affirmed the district court's grant of summary judgment in favor of an employer who had discharged several employees based on their drug-related activities at work. The district court found that the employees had been discharged for their drug-related misconduct, not on the basis of their alleged substance abuse disability. Therefore, the employer had not violated the Americans with Disabilities Act.[6] The Ninth Circuit dis-

---

4. Plaintiff does not identify the particular section of the Rehabilitation Act under which he seeks redress. However, federal employees have a valid cause of action for employment discrimination only under Section 501 of the Act (29 U.S.C. § 791). Section 504 (29 U.S.C. § 794) does not authorize suits for employment discrimination. *Johnston v. Horne*, 875 F.2d 1415, 1418 (9th Cir.1989).

5. For the purposes of this motion, Defendant does not dispute that Plaintiff suffers from a disability covered by the Rehabilitation Act.

6. The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act ("ADA") with regard to employment discrimination:

tinguished between job termination based on an employee's disability and job termination based on misconduct, citing *Little v. Federal Bureau of Investigation*, 1 F.3d 255, 259 (4th Cir.1993), where the appellate court had held that an employer must be permitted to terminate an employee because of that employee's misconduct, whether or not the employee has a handicap.

In *Newland v. Dalton*, 81 F.3d 904 (9th Cir.1996), the Ninth Circuit explicitly held that the Rehabilitation Act does not protect disabled employees from the consequences of their misconduct.

> [T]he majority of courts have held that while the Rehabilitation Act ("Act") protects employees from being fired solely because of their disability, they are still responsible for conduct which would otherwise result in their termination.... These courts have concluded that firings precipitated by misconduct rather than any handicap do not violate the Act.

*Newland*, 81 F.3d at 906. Newland, a civilian employee of the Navy, had attempted to fire an assault rifle at several persons in a bar while intoxicated. Newland argued that his violent rampage had occurred as a direct result of his alcoholism. The Court of Appeals held that the Navy had not violated the Rehabilitation Act, since Newland had been terminated as a result of his striking misconduct, not on the basis of his alcoholism.

 Thus, an employer may discipline an employee for misconduct without violating the Rehabilitation Act, regardless of whether the misconduct can be directly attributed to the employee's disability. *Id. See also Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1052 (5th Cir.1998) ("[T]he ADA does not insulate [employees from] emotional or violent outbursts blamed on an impairment."). Stated differently, a disabled employee cannot be "otherwise qualified" for a position if the employee engages in misconduct which would disqualify a non-disabled person who does not come within the protection of the Act.

The Rehabilitation Act [was] designed to put individuals with disabilities on equal footing with non-disabled people in regards to the [employment] decisions of the federal government and its grantees. It [was] not designed to insulate them from disciplinary actions which would be taken against any employee regardless of his status.

*Wilber v. Brady*, 780 F.Supp. 837, 840. (D.D.C.1992). Most circuit courts which have considered the question have reached the same conclusion; that is, if a disabled employee engages in misconduct, an employer may terminate or discipline that employee without incurring liability under the Rehabilitation Act or the Americans with Disabilities Act. *See Hamilton*, 136 F.3d at 1052 (ADA does not protect employee fired for violent outbursts at workplace, even if outbursts caused by mental impairment); *Williams v. Widnall*, 79 F.3d 1003, 1006 (10th Cir.1996) (ADA does not require employer to accept egregious behavior from disabled employee when the same behavior by non-disabled employee would require discharge); *Despears v. Milwaukee County*, 63 F.3d 635, 637 (7th Cir.1995) (ADA does not require employer to overlook crimes committed by employee even where such behavior arguably caused by employee's disability); *Maddox v. University of Tennessee*, 62 F.3d 843, 847 (6th Cir.1995) (no ADA violation to discharge disabled employee for misconduct for which non-disabled employee could lawfully be discharged); *Leary v. Dalton*, 58 F.3d 748, 753 (1st Cir. 1995) (Rehabilitation Act does not protect employees from consequences of their own misconduct, even if caused by disability); *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 214–15 (4th Cir.1994) (no ADA violation where employer fires employee for misconduct related to disability); *Little*, 1 F.3d at 259 (employer may discharge employee for egregious misconduct despite employee's disability); *Taub v. Frank*, 957 F.2d 8, 10 (1st Cir.1992) (employee's criminal conduct meant

---

The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C.

§ 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12201–12204 and 12210), as such sections relate to employment.

29 U.S.C. § 791(g).

employee could not be "qualified handicapped person" under Rehabilitation Act).

In this case, evidence submitted by both parties clearly supports the conclusion that the Postal Service demoted Plaintiff based on his off-color joking, sexual comments, threats, and hostile treatment of his employees, not on the basis of his depression. The notice of proposed termination refers to a number of incidents upon which the agency proposed to end Plaintiff's employment. It contains no reference to Plaintiff's disability. Moreover, Plaintiff had only been diagnosed as suffering from a recognized mental illness on or around May 2, 1995, and the Postal Service did not know of Plaintiff's disability until Plaintiff responded to the notice of proposed termination on May 11, 1995. Clearly, the Postal Service had received notice of Plaintiff's disability by the time Mr. Napoli issued his decision letter on May 25, 1995, because Mr. Napoli made reference to Plaintiff's condition and stated that that information had affected his decision to reduce Plaintiff in grade rather than discharge Plaintiff. However, Mr. Bennett, Plaintiff's immediate supervisor, had begun an investigation of Plaintiff's behavior and comments in the workplace early in 1995, long before the agency received notice of Plaintiff's mental disability. The disciplinary action came about as a direct result of that investigation.

■ Moreover, even if Plaintiff could prove that his mental disability had been the cause of the misconduct which led to his demotion, the Rehabilitation Act does not insulate him from the consequences of that misconduct. As explained above, the Act serves to protect individuals from being treated differently on the basis of their disability. It cannot be used as a sword to allow disabled employees to engage in behavior that would justify the discipline or discharge of any other employee. *Hamilton*, 136 F.3d at 1052.

2. Failure to Accommodate

■ The Rehabilitation Act requires federal employers to provide disabled employees with the reasonable accommodation necessary to enable the employees to perform their jobs.

An agency shall make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program.

29 C.F.R. § 1614.203(c)(1). Therefore, a federal employer can discriminate against a disabled employee by failing to provide reasonable accommodation. However, as the regulation makes clear, an employer has a duty to provide accommodation only to "otherwise qualified" employees. In this case, Plaintiff has committed misconduct. As a result of this misconduct, according to the analysis above, Plaintiff cannot be termed an "otherwise qualified" employee. Therefore, once the Plaintiff had engaged in misconduct, the Postal Service did not have a duty to accommodate whatever limitations Plaintiff might have experienced as a result of his mental disability.

■ Plaintiff argues, however, that had he been given medical leave or other accommodation in order to obtain treatment, he would have been able successfully to perform the duties of a postmaster. At the administrative hearing, Plaintiff provided some evidence to the effect that medical and psychological treatment of his condition could eliminate the workplace behavior problems which led to his demotion. Tr. Hr'g, 39:15 – 44:6. Rehabilitation Act regulations do provide that the term "qualified individual" does include an employee who requires reasonable accommodation in order to perform the essential functions of the job:

"Qualified individual with handicaps" means with respect to employment, an individual with handicaps who, **with or without reasonable accommodation,** can perform the essential functions of the position in question without endangering the health and safety of the individual or others . . . .

29 C.F.R. § 1614.203(a)(6)(emphasis added). Hence, if Plaintiff needed reasonable accommodation (in the form of time off for outpatient or inpatient care, for example) in order to be able to conform his behavior to the standard required of a Post Office supervisor, and if the Postal Service denied him that accommodation, the Service could be liable under the Rehabilitation Act.

■ However, an employer has no duty to provide reasonable accommodation until it has been made aware of the disability-related limitations of an employee.

> Employers are obligated to make reasonable accommodation only to the physical or mental limitations resulting from the disability of a qualified individual with a disability that is known to the employer. Thus, an employer would not be expected to accommodate disabilities of which it is unaware.

29 C.F.R. Part 1630 App., § 1630.9. In this case, then, the agency certainly could not have been expected to provide accommodation to Plaintiff until it had been informed of his mental disability and corresponding limitations on Plaintiff's ability to work. This did not occur until Plaintiff's representative met with Mr. Napoli to respond to the charges outlined in the proposed notice of removal dated May 3, 1995. At that point, the misconduct in question had already taken place.

■ Furthermore, an employer has no duty to provide a disabled employee with accommodation, or even to enter into discussions with an employee concerning appropriate accommodation, until the employee has requested an accommodation.[7]

> If an employee with a known disability is having difficulty performing his or her job, an employer may inquire whether the employee is in need of a reasonable accommodation. **In general, however, it is the responsibility of the employee to inform the employer that an accommodation is needed.** When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.
>
> . . . .
>
> **Once a qualified individual with a disability has requested provision of a reasonable accommodation,** the employer must make a reasonable effort to determine the appropriate accommodation.

29 C.F.R. Part 1630 App., § 1630.9 (emphasis added). Thus, an employer cannot be held liable for failing to accommodate in the absence of an employee request for accommodation.

> [I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.

*Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.1996) (involving ADA claim by employee with bipolar disorder). *See also Summers v. Teichert,* 127 F.3d 1150, 1153 (9th Cir.1997) (where employee had not asked for accommodation, employee did not show triable issue of fact as to whether employer had provided reasonable accommodation).

■ The requirement that the employee must first request an accommodation before the employer has a duty to provide one reflects the goals and policies of the Rehabilitation Act and the ADA, which emphasize equal treatment and discourage stereotyping of persons with disabilities. An employer should not presume that an employee with a disability necessarily has limitations or needs special attention or assistance. In many cases, the disabled employee will be in a better position to identify any limitations and suggest appropriate accommodation. An employer should not be expected to guess what a particular disabled employee might need.

> Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. It simply stands to reason that the employee and his health-care provider are best positioned to know what type of accommo-

---

7. The legislative history of the ADA includes the statement: "In the absence of a request, it would be inappropriate to provide an accommoda- tion...." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 65 (1990); S.Rep. No. 116, 101st Cong., 1st Sess., at 34 (1989).

**1291**

dation is appropriate for the employee. When the nature of the disability, resulting limitations, and necessary accommodations are uniquely within the knowledge of the employee and his health-care provider, a disabled employee cannot remain silent and expect his employer to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation. *Taylor,* 93 F.3d at 165. In sum, if a disabled employee never requested or proposed an accommodation, that employee cannot later claim that the employer failed to provide accommodation and thereby violated the Rehabilitation Act.

■ In the instant case, Plaintiff has not provided any evidence that he ever requested an accommodation, or that the Postal Service denied him any requested accommodation.[8] Both Mr. Bennett and Mr. Napoli testified during the administrative hearing before Judge Lee that Plaintiff had not requested medical leave or other accommodation from the Postal Service. Tr. Hr'g, 156:9–16; 177:22 – 178:4. Therefore, the Postal Service had no duty to provide Plaintiff with reasonable accommodation. Defendant cannot be held liable for failure to accommodate.[9]

### CONCLUSION

Defendant properly reduced Plaintiff's grade and pay in response to Plaintiff's serious workplace misconduct. Despite the fact that his mental disability may have contributed to his workplace misconduct, Plaintiff does not have a claim under the Rehabilitation Act. The Act does not insulate disabled employees from the consequences of their misconduct, even where that misconduct relates to the disability. In addition, because Plaintiff never requested accommodation of his disability, Defendant cannot be held liable for failure to accommodate under the Rehabilitation Act.

*IT IS, THEREFORE, HEREBY ORDERED* that Defendant's Motion for Summary Judgment (# 15) is *GRANTED.*

*IT IS FURTHER ORDERED* that Plaintiff's request for summary judgment in his favor (# 19) is *DENIED.* As to Plaintiff's appeal of the decision of the Merit Systems Protection Board, summary judgment for Defendant is hereby *GRANTED.* The decision of the Merit Systems Protection Board is *AFFIRMED.*

---

8. The fact that Plaintiff later suggested possible accommodations (for example, during the administrative hearing) does not alter the fact that he apparently never mentioned these options to the agency prior to the hearing.

9. During his meeting with Mr. Napoli, Mr. Chacon apparently asked Mr. Napoli not to terminate Plaintiff's employment, but to keep him on in some capacity. Tr. Hr'g, 169:11–17. To the extent that this may be regarded as a request for accommodation on Plaintiff's behalf, the Postal Service granted the request and therefore did provide reasonable accommodation.