Donald J. JUDICE, M.D.

v.

HOSPITAL SERV. DIST. NO. 1, et al.

Civil Action No. 95–986.

United States District Court,
E.D. Louisiana.

March 13, 1996.

Louis Leo Robein, Jr., Robein, Urann & Lurye, Metairie, LA, for plaintiff Donald Joseph Judice, M.D.

Daniel J. Walker, Watkins, Walker & Eroche, Houma, LA, Walter W. Christy, Stephen Mark Klyza, Kullman, Inman, Bee, Downing & Banta, P.C., New Orleans, LA, J. Trent Scofield, Kullman, Inman, Bee, Downing & Banta, P.C., Birmingham, AL, for defendants Hospital Service District No. 1 of the Parish of Terrebonne, a Political Subdivision of the State of Louisiana, Terrebonne General Medical Center, an Instrumentality of Hospital Service District No. 1 of the Parish of Terrebonne.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion is GRANTED.

### Background

This case is brought under the Americans with Disabilities Act of 1990 (ADA). In 1985, Donald Judice, a licensed neurosurgeon, held staff privileges at Terrebone General Medical Center (TGMC). TGMC, a defendant here, operates a 261–bed acute care hospital in Houma, Louisiana.[1] In late 1985, Dr. Judice exhibited severe symptoms of alcoholism. In March of 1986, a surgical error he committed may have caused the death of a patient, and certainly troubled his colleagues enough to focus on his alcohol abuse problem. (Dr. Judice denies that his alcoholism played any part in the patient's death, but he admits that others on the staff were concerned.) His denial notwithstanding, soon after, he requested a leave of absence and entered inpatient treatment in Hattiesburg, Mississippi.

Three months later, the doctor successfully reapplied for staff privileges at TGMC. He participated in after-care treatment and resumed his normal duties at the hospital.

In 1993, however—seven years after his previous troubles—Dr. Judice's alcohol addiction resurfaced. According to the plaintiff, the deaths of two close friends, combined with the stresses of his practice caused his relapse to drinking. Despite his false denials, hospital administrators became concerned that he had relapsed; in fact, a blood test taken on the morning of February 24, 1994,—just before a scheduled surgery—indicated the presence of alcohol. TGMC summarily suspended Dr. Judice's staff privileges. The Louisiana State Board of Medical Examiners (LSBME) soon followed suit. The Medical Society's Impaired Physicians Program recommended that Dr. Judice enter treatment once again.

Dr. Judice started still another in-patient program at Palmetto Addiction Recovery Center on March 22, 1994. His recovery was rocky: he relapsed during a weekend furlough in June, and spiralled into several days of such severe depression that he even contemplated suicide. At the insistence of a friend, he re-entered the Palmetto program again, and, on August 4, successfully completed it. The report of Dr. Cook, the plaintiff's treating physician at Palmetto, recommended his return to medical practice, but only under certain limiting conditions. *See Defendants' Ex. 24 (Aug. 31, 1994, Letter*

1. The other defendant, Hospital Service District No. 1 of Terrebone Parish, is the governmental subdivision that governs TGMC.

*from Dr. Cook).* Dr. Cook sent copies of his report to TGMC and to the state licensing board. In October, 1994 the state board reinstated Dr. Judice, subject to six detailed conditions that were stated in a consent order signed by Dr. Judice. *Defendants' Ex. 25.*

The consent order reflected Dr. Cook's prognosis and conditional supervision. The monitoring conditions demanded: (1) that Dr. Judice continue to participate in outpatient treatment; (2) that Dr. Cook make quarterly reports to the board concerning the doctor's progress and fitness; (3) Dr. Judice's complete abstinence from alcohol or any non-prescribed mood-altering substances; (4) restrictions in his work activities, including limitations on the number of his offices and hospitals, weekly work-hours, on-call time, number and type of surgical procedures, and litigation-related medical activities (such as trial and deposition testimony); (5) that another doctor monitor and review Dr. Judice's medical performance and report regularly to the board; and (6) that Dr. Judice investigate career opportunities in his field that provided "more structure" than his present practice, such as teaching. *Id.* At best, these oversight conditions were cautious of his ability to safely practice neurosurgery. One even inferred that he should consider teaching, rather than operating. The board decreed that the oversight conditions would be effective for five years following reinstatement, and required an interim assessment of the order after two years. The board, in a later communication to the defendants, noted that the conditions of the consent order "are not intended as punitive sanctions, but in aid of Dr. Judice's continuing recovery ... to ameliorate stresses in his professional practice which might undermine his recovery." *Plaintiff's Ex. 2* (Att. 2). They would, obviously, safeguard Dr. Judice from the regular stresses of his surgical practice; they sought to insure that still another relapse would not occur. They recognized that stress could cause Dr. Judice to relapse.

One week after the board issued the consent order, Dr. Judice applied to TGMC for reinstatement of his staff privileges. Over the next month the hospital's Executive Committee reviewed his application and made inquiries of its liability insurers. The insurers confirmed that reinstatement of Dr. Judice's privileges would have no effect on the hospital's premiums, which were fixed. But hospital management remained concerned.

During the same period, the hospital's Physician Health Committee suggested that the hospital obtain a second opinion regarding Dr. Judice's condition and his risk of relapse. The hospital's counsel, Daniel Walker, sketched the situation for Dr. Lee McCormick at a national conference; Dr. McCormick advised that TGMC would be wise to obtain a second opinion, both for reasons of liability, and for quality assurance and reputation. Mr. Walker was impressed and contacted Dr. Douglas Talbott, an Atlanta addictionologist, for details regarding such a "fitness-for-duty" evaluation. Dr. Talbott, an admitted specialist in such matters, explained that the evaluation required four days of intensive review concerning the patient's history and medical, psychological, emotional, and neurological condition. After a December 5, 1994 meeting, the head of the TGMC Physician Health Committee wrote to tell Dr. Judice that the hospital wanted him to undergo this four-day evaluation at the hospital's expense. The plaintiff resisted the necessity of a second opinion, and his lawyer sent a letter to the hospital board outlining his concerns under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The hospital stood firm; on March 15, 1995 it recommended the doctor's reinstatement, conditioned upon a favorable report from a four-day evaluation by a specialist. Dr. Judice refused to agree and, ten days later, he sued TGMC and the hospital district, claiming that the hospital's request for a second opinion discriminated against him in violation of subchapters II and III of the ADA.

It is uncontested that, at the time of the committee's decision and at all times thereafter, Dr. Judice has fully complied with all restrictions placed on his practice. He has remained in recovery throughout. Indeed, the plaintiff has obtained hospital privileges at two other hospitals, Thibodeaux and

Northshore, and has performed without incident. He also notes that several months after this lawsuit was filed, the Louisiana State Board of Medical Examiners amended the consent order to remove all restrictions on Dr. Judice's practice and work-related activities. But the State Board retained the aftercare treatment and abstinence conditions. *See Plaintiff's Ex. 1 (Att. 30)*. The defendants now move for summary judgment.

## Law And Application

### I. Summary Judgment

Federal Rule of Civil Procedure 56 teaches that summary judgment is appropriate if the record discloses that no genuine issue as to any material fact exists, and that the movant is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is proper if the opponent fails to establish an essential element of any claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Yet, the Fifth Circuit cautions us that we must "resolve all doubts and draw all reasonable inferences in favor of the non-movant" to determine whether the movant is entitled to judgment as a matter of law. *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994).

### II.

■ To make out a *prima facie* case under the ADA, one must establish: (1) that he is a qualified individual with disabilities; (2) that he was discriminated against by a public entity; and (3) that the discrimination occurred because of his disability. *Tyler v. City of Manhattan*, 857 F.Supp. 800 (D.Kan.

1994). In this case, Dr. Judice claims alternatively under subchapter II (covering public services) and subchapter III (covering public accommodations) of the ADA. The defendants first challenge the applicability of both subchapters II and III; next, they dispute the merits of the plaintiff's discrimination claim. The Court will address each of these contentions in turn.

### A.

TGMC first attacks the plaintiff's claim under subchapter II of the ADA.[2] Subchapter II of the ADA prohibits any "public entity" from subjecting any "qualified individual with a disability" to discrimination on the basis of that disability.[3] 42 U.S.C. § 12132 (1990). The defendants agree that the district and the hospital are "public entities." And they do not appear to dispute that Dr. Judice is a "qualified individual with a disability." Nor do they deny that the conditions for readmission they imposed on Dr. Judice differed from those required of non-disabled doctors.

■ Instead, the defendants dispute that their conduct falls within the protection of the ADA. They note, correctly, that the courts have looked to Title VII of the Civil Rights Act of 1964 in determining the reach of the ADA's protections. They urge, however, that subchapter II and Title VII, read together, require proof of an employment relationship to state a claim for discrimination. According to the defendants, Dr. Judice—an independent physician protesting his denial of staff privileges—had no employment relationship with the defendants. *See Diggs v. Harris Hospital–Methodist*, 847 F.2d 270 (5th Cir.1988) (holding that plaintiff, a non-employee physician, could state no claim under Title VII for denial of her staff privileges); *but see Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411 (7th Cir.1986)

---

**2.** The defendants also ask for dismissal of Dr. Judice's subchapter III claim, on grounds that they are not "public accommodations" within the meaning of the ADA. *See* 42 U.S.C. § 12181(7) (1990); 28 C.F.R. § 36.104 (1995). The plaintiff does not dispute this contention, and the Court agrees that "public entities" such as the hospital district and TGMC, are specifically excluded from coverage under subchapter III.

**3.** The statute instructs that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

(holding that independent doctor could state Title VII claim for denial of staff privileges). Thus, the defendants contend, the doctor has no claim under subchapter II of the ADA.

■ The Court need not decide whether *Diggs* mandates the existence of an employer-employee relationship for subchapter II purposes. As the plaintiff observes, discrimination need not occur in the employer-employee context to be actionable under subchapter II of the ADA. The regulations adopted by the Department of Justice expressly provide several examples of prohibited nonemployment-related disability discrimination:

> (3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
>
> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;....
>
> (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity being offered.

28 C.F.R. § 35.130 (1995). The regulations do not seem broader than the statute. *See,* note 3, *supra.* Thus, the existence of an employment relationship, within the meaning of *Diggs,* is not material to Dr. Judice's claim under subchapter II. The processing of his application for staff privileges by the defendants, public instrumentalities, constitutes covered conduct under the statute. Dr. Judice has established a *prima facie* case of discrimination. The Court now turns to the defendants' justifications for their conduct.

### B.

Both parties frame the central question: whether the independent evaluation required by the TGMC board subjected Dr. Judice to *unjustified* discrimination. In other words, did the hospital act unreasonably? The ADA allows public entities to apply different conditions and criteria if necessary for their safe operation. *See* 28 C.F.R. § 35, App. A (1995). The regulations further caution that

"[s]afety requirements must be based on actual risks and not on speculation, stereotypes, or generalizations about individuals with disabilities." *Id.*

In this case, the battle lines are clearly drawn. The hospital asserts that legitimate concerns for public health and safety prompted its decision. Therefore, the Court is told, it acted reasonably. The plaintiff counters that the additional evaluation is unnecessary and invasive and bears no relationship to the doctor's fitness for practice. It is, the doctor says, based upon a generalized suspicion of all alcoholics.

■ To prevail on summary judgment, the defendants must show that they were entitled, as a matter of law, to require Dr. Judice to undergo a second specialized medical evaluation before reinstating his privileges. The Court agrees that defendants acted reasonably, on this record, under prevailing jurisprudence.

### C.

The Court's inquiry focuses on whether, at the time he reapplied for privileges, Dr. Judice posed an objective "actual risk" to safety. The subchapter II regulations provide scant guidance concerning the factors bearing on this assessment. The Court notes, however, that the "actual risk" language at issue is largely analogous to the concept of "direct threat" to public safety, found in the regulations to subchapter I of the statute. Several provisions interpreting "direct threat" are helpful.

First, a "direct threat" is one that poses "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). Second, the regulations warn that mere assertion of such a threat will not do: this determination must be based on "an individualized assessment of the individual's present ability to safely perform the essential functions" of the position. Such an assessment "shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." Such an assess-

ment animates an objective standard. Finally, the regulations set forth four factors to aid in the determination: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) likelihood that the potential harm will occur; and (4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r). With these markers in mind, the Court considers the present record and views it with an objective standard in mind.

The defendants clearly had a right—and a duty—to ensure that all physicians at the hospital practiced, within reason, safely and skillfully. Certainly, a doctor working while severely depressed or impaired by alcohol poses a "direct threat" or "actual risk" of harm to others. It is no stretch to say this is especially true of a neurosurgeon. Likewise, a doctor laboring under a high likelihood of relapse, based on specific prior history, might pose such a risk.

TGMC contends that a similar threat to public safety prompted its demand for a second assessment of Dr. Judice's condition, by a specialist in the field of addiction. It relies first on the plaintiff's record of alcohol abuse. A long period—six years—of abstinence followed the doctor's 1986 leave of absence; but despite his apparent progress, he began drinking heavily again in late 1993. In addition, he suffered one severe relapse during his 1994 rehab treatment. What did the hospital know? One controversial death, three episodes in rehabilitation, repeated troubling encounters with alcohol, depression verging on suicide, and an aborted operation because of alcohol in the bloodstream. This history, the defendants urge, shows the unpredictability of Dr. Judice's condition; the need to be wary and worried. One must add that his denial of his addiction, when confronted, also tended to indicate that the hospital could have no forewarning of a relapse. The defendants rightfully emphasize, too, that their request for a second opinion was made after professional consultation, and was supported by a professional addictionologist of undisputed repute. Thus, the hospital asserts, it assessed the situation based on reasonable medical judgments and discrete objective evidence, as directed by the regulations. See 29 C.F.R. § 1630.2(r).

As jurisprudential support, the defendants rely on two persuasive cases: *Altman v. New York City Health & Hosp. Corp.*, 903 F.Supp. 503 (S.D.N.Y.1995), and *Butler v. Thornburgh*, 900 F.2d 871 (5th Cir.1990). The *Altman* court granted summary judgment in favor of a hospital that refused reinstatement to an alcoholic, a doctor who previously was that hospital's Chief of Internal Medicine. Dr. Altman had several episodes of on-the-job drinking, but had recently emerged from treatment. *Altman*, 903 F.Supp. at 506–07.

In *Butler*, the Fifth Circuit aligns even more closely with the present case. In that decision, the court upheld summary judgment against the plaintiff, an FBI agent in alcohol abuse recovery. Despite the plaintiff's good prognosis, the *Butler* court agreed that the agency was entitled, as a matter of law, to end his employment. Butler's sensitive work made the risk of harm, should Butler relapse, intolerable. *Id.* at 876. Similarly, in *Altman*, the plaintiff held—as Dr. Judice does here—great power over the lives of others: the results of relapse in such a situation could be, the court found, "a recipe for disaster." 903 F.Supp. at 513. This Court, again, emphasizes the aborted operation because of alcohol in the bloodstream. These two court decisions, TGMC urges, show the reasonableness of its second-opinion requirement. This Court agrees.

The plaintiff attempts to meet the hospital's showing of risk by distinguishing his position from that involved in the *Altman* case. Dr. Judice urges that his work at TGMC—unlike a staff chief—was amenable to meaningful oversight and monitoring. Further, Dr. Judice draws attention to the detailed report of his treating physician, Dr. Cook, and the consent order issued by the Louisiana State Board of Medical Examiners. Both, urges the doctor, attest to his fitness to practice under the outlined conditions. *See Defendants' Ex. 25*, at 2 (stating that Dr. Judice had "the capacity to engage in the practice of medicine with reasonable skill and safety to patients, provided that [he] strictly observes and complies with appropriate restrictions on and conditions to maintenance of his medical license."); *Plaintiff's Ex. 2 (Att. 9)* (Dec.1994 letter from the chair of the

state board's Physicians' Health Committee offering to discuss Dr. Judice's reinstatement with the TGMC board, and stating that "because of [Dr. Judice's] compliance [with the licensing restrictions], we can very strongly be an advocate for him and support his practice of medicine."). The Court disagrees with plaintiff's characterization. In fact, even the licensing board, at the critical time, believed a five year monitoring period of oversight and control was needed.

The plaintiff suggests that *Brumley v. Pena,* 62 F.3d 277 (8th Cir.1995) offers a more appropriate analogy than *Butler.* In that case, a former employee of the Federal Aviation Administration sued the agency for disability discrimination based on the agency's requirement that he submit to a psychiatric examination to determine his level of recovery from "severe reactive depression," a mental illness. *Id.* at 277–78. The Eighth Circuit held that the examination was necessary and justified, and upheld summary judgment for the FAA. The agency, stated the court, possessed "no adequate medical information upon which to base a determination that Brumley [was] either partially or fully recovered. . . . [the plaintiff] has not provided sufficient medical information upon which the FAA could base a determination." *Id.* at 279–80.

But such is not the case here, Dr. Judice insists: the report of Dr. Cook and the state board's probationary reinstatement of his medical license show that he had attained a sufficient level of recovery. He insists the information shows that the threat he posed to public safety, if he complied with his licensing restrictions, was insignificant. This assessment alone, contends the doctor, provides the answer to the hospital's concerns of risk. In light of these facts, the doctor asserts, the hospital's conditions are clearly based on prohibited "generalized fears" about alcoholism, rather than on objective evidence. *See* 28 C.F.R., § 35, App. A (commentary regarding 28 C.F.R. § 35.130(b)(8)); *see also* 29 C.F.R. § 1630, App. (commentary regarding "direct threat" under § 1630.2(r)) ("Generalized fears about risks from the employment environment, such as exacerbation of the disability caused by stress, cannot be used . . . to disqualify an individual with a disability.")

The doctor overplays the significance of Dr. Cook's report and the state board's conditions. Without question, both show that Dr. Judice had shown good progress toward controlling his alcoholism. But good progress cannot be parlayed into a clear statement of full recovery or unqualified recommendation; and the hospital need not accept it as such. The hospital is entitled to consider Dr. Judice's history. That is the important snapshot in time. His most recent incident occurred merely four months before his application. Moreover, the medical advice offered by both Drs. McCormick and Talbott weighs importantly in the balance: both recommended a second evaluation as appropriate. Even if, as the plaintiff claims, these doctors did not have every fact before them, the hospital presented them with enough— Dr. Judice's prior history and his position at the hospital—to support their recommendation. The hospital acted within objective reason. *Brumley,* therefore, is not a helpful guide.

Given these factors, the Court finds that Dr. Judice posed a sufficient risk to public safety to justify a second evaluation. The hospital's requirement rested not on generalized fears about those suffering from alcoholism, but on Dr. Judice's specific and uncertain past history, and the reasonable judgments of a specialized medical professional. The Court recognizes that it is the terrible nature of alcoholism that one is never cured, but progresses through different levels of recovery. The final report of Dr. Cook indicates that Dr. Judice had made enormous personal effort and was progressing well; but it does not serve as suitable proof that the objectively reasonable risk Dr. Judice posed—to himself and to others—was insignificant. In this context, the hospital's demand for a second evaluation of risk was reasonable and warranted. His repeated encounters with alcohol were enough to act upon in believing that a second opinion was needed when the licensing authority imposed strict conditions of oversight for five years.

Accordingly, the defendants' motion for summary judgment on all claims is GRANT-ED.