Fremont-Smith, J.
The plaintiff, Edward White (“White”), alleges that the defendants, City of Boston and Paul Evans (collectively, “the City”), violated state and federal age and handicap discrimination laws when they refused to reinstate him as a police officer after he took disability retirement. The plaintiff seeks reinstatement and monetary damages, claiming that the City violated the following: G.L.c. 151B, §4 (Counts I, II, V, and VII), 29 U.S.C. §794 (the Federal Rehabilitation Act (“the Rehabilitation Act”)) (Counts III, IV, and VI), and 42 U.S.C. §12112 (the American’s with Disabilities Act (“the ADA”)) (Counts VIII, IX, and X). The plaintiff also seeks a declaratory judgment pursuant to G.L.c. 231A, §1 finding that the defendants violated c. 306 of the Acts of 1996 by refusing to reinstate him. (Count XI.)[2] The plaintiff and defendants have moved for partial summary judgment as to Counts II, IV, IX, and XI. For the following reasons, the defendants’ motion for partial summary judgment is ALLOWED as to Counts II, IV, IX, and the plaintiffs cross motion for partial summary judgment is ALLOWED as to Count XI. Counts I, III, V, VI, VII, VIII, and X remain for disposition'by dispositive motion or trial.
FACTUAL BACKGROUND
The record on summary judgment contains the following undisputed facts. White worked as a police officer for the City from June 1970 to September 1981. In 1981, he suffered an injury in an automobile accident during work hours and went on disability. White has received an accidental disability pension pursuant to G.L.c. 32, §7 since August 31, 1981.
On October 25, 1993, White applied for reinstatement as a Boston police officer. The State Boston Retirement Board (“the Board”) reviewed his application and requested that an orthopedic medical panel evaluate White’s recovery from his disability. On March 24, 1994, the panel determined that White was fit for service as a police officer. The City then required White to submit to a physical and psychological examination pursuant to its departmental regulations.[3] The City also required White to complete a “recruit candidate information form” to enable the City to conduct a background check. In August of 1995, the City denied White’s application for reinstatement because the background check had revealed that White had an *233 unsatisfactory attitude and a history of frequent on-duty injuries.
White brought this action in Superior Court alleging, among other things, that the City violated the ADA, the Federal Rehabilitation Act, and G.L.c. 151B when it required him to submit to the physical and psychological examinations. He also alleges that the City violated G.L.c. 32, §8 by refusing to reinstate him.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and that the moving party is entitled to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. The City did not violate the ADA, the Rehabilitation Act, or G.L.c. 151B, §4 by requiring White to submit to physical and psychological examinations
White alleges that the City violated the ADA, the Federal Rehabilitation Act, and G.L.c. 151B by requiring him to submit to physical and psychological examinations. “[T]he ADA extended to the private sector the essential substantive provisions of the Rehabilitation Act of 1973" and courts ’’adjudicate ADA claims in a manner consistent with decisions interpreting the Rehabilitation Act. Specifically, the ADA’s statutory provisions on medical examinations and inquiries were drawn from Rehabilitation Act regulations." Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 676, fn. 5 (1st Cir. 1995). G.L.c. 151B was also patterned after the Rehabilitation Act. Talbert Trading Co. v. Massachusetts Commission Against Discrirpination, 37 Mass.App.Ct. 56, 60 (1994).
The ADA provides that:
a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability ... A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions. 42 U.S.C. §12112 (d)(2)(A)(B)
The Rehabilitation Act provides that:
No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability ... be subjected to discrimination under any program or activity receiving Federal Financial Assistance ... the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 etseq.) ... 29 U.S.C. §794(d)
G.L.c. 151B, §4(16) provides that:
an employer may not make preemployment inquiry of an applicant as to whether the applicant is a handicapped individual or as to the nature or severity of the handicap, except that an employer may condition an offer of employment on the results of a medical examination conducted solely for the purpose of determining whether the employee, with reasonable accommodation, is capable of performing the essential functions of the job[.][4]
The plaintiff argues that the ADA, the Rehabilitation Act, and c. 151B prohibit employers from requiring job applicants to submit to medical examinations. The above mentioned statutes regulate an employer’s right to demand that an outside job applicant who is applying for a job for the first time submit to an exam. The statutes do not, however, address the situation where an employee takes disability leave and later seeks re-employment with the same employer. “It appears that neither Congress nor the EEOC took into account the case of a returning employee when formulating the restrictions on pre-offer inquiries” and medical exams. Grenier at 677.
While the ADA, the Rehabilitation Act, and c. 15IB prohibit pre-employment medical exams unless they are conditioned upon an offer, courts have held that medical exams are permitted where the employee is seeking re-employment with the same employer. In Brumley v. Pena, 62 F.3d 277 (8th Cir. 1995), the plaintiff was employed by the FAA and left his employment after suffering severe depression. He received disability retirement payments until 1987, at which time, while still receiving retirement benefits, he requested priority consideration for restoration to duly. Id. at 277-78. To receive priority consideration, the FAA first had to determine whether the plaintiff was partially or fully recovered from his disability (fully recovered employees are entitled to priority consideration; partially recovered employees are not). Id. at 278. The FAA informed the plaintiff that he would have to submit to a psychological exam so that it could determine whether he was entitled to priority consideration. Id.
The Court held that the FAA could require a medical examination to determine the plaintiffs level of recovery. Id. at 279. The court stated that while the Rehabilitation Act prohibits employers from requiring pre-employment physical examinations, the plaintiff *234 was not an outside job applicant seeking employment for the first time, but was instead seeking re-employment. Id. The court, in dicta, noted that its resolution might have been different had the plaintiffs disability retirement payments been terminated on the ground that he was no longer disabled (thereby indicating that the plaintiff was fully recovered and therefore obviate the need for a medical examination). Id.[5]
While the ADA, the Rehabilitation Act, and c. 15 IB prohibit employer inquiries regarding the type of accommodation an applicant requires, in Grenier, the First Circuit held that an employer may inquire if the employee is applying for re-employment with the same employer. Athough White does not claim that the City made an improper inquiry, the First Circuit’s reasoning is instructive. The plaintiff in Grenier worked for Cyanamid and was placed on disability leave due to psychological problems. After his employment officially terminated pursuant to Cyanamid’s disability policy, the plaintiff sought reinstatement to his previous position. Id. at 668. Cyanamid requested a certification from the plaintiffs treating psychiatrist to determine whether the plaintiff had recovered. The court deemed the request an inquiry rather than an exam because the request did not necessitate new tests or procedures. Id. at 676. The court noted at the outset that, “[a]s in Brumley, [] [it] face[d] the quandary of determining the appropriate parameters of a pre-offer inquiry of a former employee who is the recipient of disability benefits and now seeks re-employment." Id. While the ADA prohibits pre-employment inquiries regarding an individual’s disability, the court concluded “that the ADA does not preclude an employer from asking an applicant with a known disability who seeks a reasonable accommodation to specify the type of accommodation he seeks.” Id. at 677. “The central purpose of the prohibition on pre-offer inquiries generally is to ensure that an applicant’s hidden disability remains hidden . . . With respect to known disabilities, however, the emphasis is on encouraging the employer to ‘engage in an interactive process with the individual to determine an effective reasonable accommodation.’ ” Id.
Finally, while the ADA contains specific prohibitions regarding pre-offer inquiries and exams, “[t]he ADA allows public entities to apply different conditions and criteria if necessary for their safe operation.” Judice v. Hospital Serv. Dist. No. 1, 919 F.Supp. 978, 982 (E.D.La. 1996). In Judice, the plaintiff, a neurosurgeon, requested a leave of absence from the hospital where he worked in order to enter a treatment program for alcoholism. Id. at 979. He recovered and successfully reapplied for staff privileges, but relapsed a few years later and again entered treatment. Id. The plaintiff applied once again for reinstatement after completing another treatment program. Id. at 980. The state board evaluated the plaintiff and reinstated him, but the hospital remained concerned and requested that the plaintiff submit to a four day medical evaluation. Id. In holding that “the hospital’s demand for a second evaluation of risk was reasonable and warranted” and that the exams did not violate the ADA, the court observed that the plaintiff “posed a sufficient risk to public safety to justify a second evaluation . . . [and] [t]he defendants clearly had a right — and a duty — to ensure that all physicians at the hospital practiced, within reason, safely and skillfully.” Id. at 983-84.
Because the ADA, the Rehabilitation Act, and c. 15 IB do not specifically prohibit medical examinations for persons applying for re-employment, and because case law supports examinations in these circumstances, this court finds that the City did not violate the ADA, the Rehabilitation Act, or c. 151B when it required White to submit to the exams. The reasoning in Grenier is persuasive in that where a person seeks re-employment, there is no premium on preventing disclosure of a disability because the disability is already known. The City “must be able to assess the extent of the applicant’s recovery from inability to perform.” Id. at 677. The City knew that White had been disabled and was justified in requiring the exams to determine whether or not his disabilities would prevent him from performing the duties of a police officer. The City followed its departmental procedures in administering the exams, and these exams were warranted in light of the plaintiffs work history on the police force.[6] The City knew that the plaintiff had been physically disabled and had also had psychological difficulties, and the medical and psychological exams were necessary to determine whether the plaintiff could reasonably, safely and skillfully perform the essential job functions of a police officer.
The plaintiff argues that, because the court in Brumley opined that had the plaintiffs benefits already been terminated based on a finding of fitness for work, the court might not have required further examination, the City had no right to such an examination here. The court in Brumley, however, was speculating in dicta as to what it might have done had the plaintiffs disability benefits been terminated on the basis of fitness for work. Here, White’s disability benefits have still not been terminated, and, given the nature of a police officer’s position and the public safety concerns involved, this Court concludes that the exams were warranted.
The plaintiff also argues that the holdings in Brumley and Grenier do not apply to his 15IB claim because these cases were decided according to the ADA and the Rehabilitation Act rather than 151B. As stated previously, 15 IB and the ADA were modeled after the Rehabilitation Act, so that the holdings and reasoning of Brumley and Grenier are applicable to the plaintiffs 151B claim.
II. The City, by refusing to reinstate White after his disability has ended, is in violation of M.G.L.c. 32, §8
Chapter 306, Acts of 1996, amended G.L.c. 32, §8 on November 11, 1996. Prior to c. 306, Acts of 1996, G.L.c. 32, §8 read:
*235 If, as a result of the report of such regional medical panel, the board finds that mental or physical condition of such retired member has so changed that-he is physically able to return to the same or similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement, or in a similar employment in the same governmental unit. (Emphasis added.)
Chapter 306 amended G.L.c. 32, §8 to read:
If, after two years of the date that a member is retired under Section six or seven, the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant. (Emphasis added.)
It is evident from the statute’s wording that c. 306 was intended to remove the commissioner’s discretion in reinstating retired members. The defendants argue that c. 32, §8 as amended is unconstitutional because St. 1906 c. 291 gives the commissioner discretion to appoint, establish, and organize the police force and the legislature cannot remove this discretion, citing Commissioner of the Metropolitan Dist. Commn. v. Director of Civil Services, 348 Mass 184 (1964), to support their contention. The Court in Commissioner first observed that the commissioner “possesses whatever discretion is given to an appointing authority under the civil service statutes and regulations,” indicating that the legislature can, at least to a certain extent, limit the discretion of the commissioner. Id. at 187. In determining that a statute which gave absolute preference for civil service positions to disabled veterans was unlawful, in circumstances where the applicant had been convicted of a felony but had been pardoned, the Court also stated that:
it is inconsistent with the nature of our government, and particularly with articles 6 and 7 of our Declaration of Rights, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class in preference to all others, without the exercise on its part of any discretion, and without favorable judgment of some . . . officer or board designated by law to . . . determine whether the persons to be appointed are actually qualified to perform the duties which pertain to the offices. Id. at 188.
The court concluded that giving veterans “an absolute preference [without determining whether or not they were qualified] would [] lead to serious doubts of [the statute’s] constitutional validity.” Id. at 193.
Chapter 32, §8, however, does not give an absolute or automatic preference to one class of officers over another. Unlike the veterans, who by statute were to be given preference for the positions automatically without review, an officer applying for reinstatement has already been initially hired after being reviewed and found to be qualified, and is to be reappointed only after the Board’s medical panel has certified based upon further examination that he is no longer disabled.
As for St. 1906, c. 291, the Supreme Judicial Court has held that:
the provisions of a special act generally prevail over conflicting provisions of a subsequently enacted general law . . . however . . . [wjhere legislation deals with a subject comprehensively, it ‘may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated’ . . . Thus, a statute designed to deal uniformly with a Statewide problem ‘displays on its face an intent to supersede local and special laws and to repeal inconsistent special statutes.’ Boston Teachers Union, Local 66 v. Boston, 382 Mass. 553, 564 (1981).
M.G.L.c. 306 was intended to deal specifically and uniformly with a statewide problem (refusing to reinstate officers who are on disability but are physically capable of work), and thus, to that extent, qualifies or abrogates the commissioner’s discretion under St. 1906, c. 291 in regard to the reappointment of officers to duty.
The defendants further argue, however, that even if the amended statute is lawful, because the plaintiff applied for reinstatement prior to the enactment of c. 306, the amended statute does not apply to him. “(A]ll statutes are prospective in their operation [] unless an intention that they shall be retrospective appears by necessary implication from their words,” and there is no wording in c. 32, §8 to permit this court to find that the legislature intended the statute to be retroactive. City Council of Waltham v. Vinciullo, 364 Mass. 624, 626 (1974). However, while the plaintiff applied for reinstatement and was refused prior to the amendment of c. 32, §8, he did renew his demand for reinstatement after the amendment. Nor is the Court aware of any reason he could not reapply. In these circumstances, the Court views his renewed demand as the functional equivalent of a re-application after the amendment, and will order him reinstated as of that time.
ORDER
For the above reasons, the Court hereby ORDERS that the plaintiffs Motion for Partial Summary Judgment is DENIED, except as to Count XI, which is ALLOWED. The defendants are ordered to reinstate the plaintiff effective as of the date of his post-enactment demand.[7] The defendants’ motion for partial summary judgment as to Counts II, IV, and IX is *236 ALLOWED. Counts I, III, V, VI, VII, VIII and X remain for pre-trial disposition[8] or for trial.

 All references are to plaintiffs “second amended complaint (supplemented).”

 The procedures state that “[t]he retiree must undergo a comprehensive medical examination by a recognized medical specialist in the retiree’s area of disability."
The plaintiff submitted an affidavit stating that the department required him to take two physical exams on October 27 and December 7, 1994 and two psychological exams on November 19 and December 4, 1994. The defendant submitted an affidavit stating that the plaintiff had a physical examination on December 7, 1994 and a psychological examination on November 11, 1994. The only medical evaluation submitted by the plaintiff and defendants is the exam conducted on December 7. The number of exams that the City required White to take is not relevant to this court’s decision.

 “It is also clear that the statute permits an employer to make a preemployment inquiry of any prospective employee concerning any handicap or physical impairment and subject an offer of employment to the results of a medical examination.” Talbert Trading Co. at 61, fn. 3.

 As in Brumley, White continues to receive disability payments.

 White had numerous injuries while employed as a police officer, and he was considered to have exhibited a negative work attitude.

 The date of this demand does not appear in the record, but was subsequent to the amendments enacted on November 11, 1996.

 The issue raised by these Counts is whether White was refused reinstatement because of an alleged bad attitude, a history of job-related injuries, and other deficiencies revealed by a “background check,” or whether these purported reasons are a pretext for discrimination. If the defendants believe that the plaintiff lacks evidence to support any of these claims, so that they might be resolved by summary judgment, the defendants may serve and file such a motion (together with any opposition papers) within 60 days of receipt of this order.