Burnes, J.
Both parties move for summary judgment pursuant to Rule 56 of the Massachusetts Rules of Civil Procedure. The parties assert, and this Court agrees, that the issue presented by these cross mo *51 tions requires an interpretation of newly-amended language in G.L.c. 32, §8, the public employee disability retirement statute. For the reasons set forth herein, after a hearing on December 1,1997, plaintiffs Motion for Summary Judgment is ALLOWED. The defendant’s Cross Motion for Summary Judgment is DENIED.
I.BACKGROUND
What follows are the undisputed facts. The plaintiff, William B. Gaughan (“Gaughan”), became a police officer with the defendant, Boston Police Department (the “Department”), in 1968. On October 26, 1973, while on duty as a police officer, Gaughan sustained a knee injury when he was struck by a car. Gaughan subsequently attended physical therapy and other rehabilitation.
As a result of his injury, effective October 30, 1975, the Department involuntarily retired Gaughan pursuant to G.L.c. 32, §7. At that time, it was Gaughan’s desire to continue working. He retired reluctantly.
In September 1993, Gaughan made a request to the State-Boston Retirement Board (the “Retirement Board”), pursuant to G.L.c. 32, §8(2), for a medical examination for the purpose of seeking reinstatement to the Department. Per his request, on January 6, 1994, Gaughan was examined by a regional medical panel. The panel consisted of three physicians, all of whom certified that Gaughan was capable of returning to work as a police officer. Based on the medical panel’s examination, the Retirement Board, on January 27, 1994, voted to “order” the reinstatement of Gaughan to the Department pursuant to G.L.c. 32, §8(2). The Retirement Board subsequently informed Gaughan that he was capable of returning to active duty as a police officer with the Department. In a letter dated January 31, 1994, the Retirement Board informed defendant, Paul Evans (“Evans”), Commissioner of the Department, of its decision.
Gaughan was notified by the Department that he, like all other retired officers seeking to return to duty, would be required to meet a number of criteria before being permitted to rejoin the force. One criterion is that petitioning retirees successfully complete a background investigation by the Department’s Recruit Investigation Unit (the “Unit”). Following a background investigation by the Unit, Edward E. Callahan (“Callahan”), Director of Human Resources for the Department, received information that while retired, Gaughan allegedly had an association with an individual who had a criminal history. Further, the investigation revealed that Gaughan was allegedly involved in the illegal gaming industry.
In a letter dated August 7, 1995, Callahan notified Gaughan that his request for reinstatement had been denied by Evans. The letter listed the findings of the Unit as grounds for Gaughan’s rejection. The letter added further that the Department declined to reinstate Gaughan because in 1982, 1983, 1985, 1989 and 1991, he failed to file “An Annual Report of Earnings” with the State-Boston Retirement System pursuant to G.L.c. 32, §91A. A few days later, however, Callahan received a letter from the State-Boston Retirement System stating that the Department’s position that Gaughan had not filed all of the statutorily required reports was an error, and that Gaughan had indeed filed the required reports for the years in question. Gaughan received a letter dated September 23, 1996 from the State-Boston Retirement System confirming that he had filed the requisite forms since 1975, the year of his involuntary retirement.
During the course of his career with the Department, Gaughan was never formally charged with rule violations or required to appear before a disciplinary board. Nor has Gaughan ever been convicted of a crime.
Gaughan initiated this action in July 1996, challenging the Department’s refusal to reinstate him as a police officer. In a letter dated November 22, 1996, Gaughan renewed his request for reinstatement, expressly stating that the request was made pursuant to the recently amended public employee disability retirement statute, G.L.c. 32, §8(2).
II.PROCEDURAL BACKGROUND
In July 1996, Gaughan filed a complaint in the Superior Court, challenging Evans’ refusal to reinstate the former as a Boston police officer. In his complaint, Gaughan sought a preliminary injunction to prevent Evans from hiring anyone as a Boston police officer after August 1, 1996, and to immediately reinstate Gaughan. Evans opposed the request for an injunction. Gaughan’s counsel waived the motion in open court. The Department and Evans have since answered Gaughan’s complaint.
In January 1997, Gaughan again requested a preliminary injunction. This time, however, Gaughan requested that an injunction be granted to compel Evans to return Gaughan to active duty based on the 1996 amendments to G.L.c. 32, §8(2). After a hearing on the matter on January 30, 1997, the Court (Rouse, J.) denied Gaughan’s request on grounds that he failed to demonstrate a reasonable likelihood of success on the merits.
III.DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Summary judgment is warranted when all material facts have been established and the moving party is *52 entitled to judgment as a matter of law. See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). A court will grant summary judgment to the party entitled to judgment as a matter of law where “there is no real dispute [concerning] the salient facts,” or where, as here, a case only involves a question of law. Cassesso, 390 Mass. at 422.
The sole issue is one of statutory construction: specifically, whether the amendments to the public employee retirement disability law, G.L.c. 32, §8, leave the Boston Police Commissioner with any discretion in hiring former officers who were involuntarily retired under G.L.c. 32, §7, but who are later ordered to be reinstated to active duty by the Retirement Board. After careful consideration of the law, this Court holds that the amendments to G.L.c. 32, §8(2) remove all of the Commissioner’s discretion.
G.L.c. 32, §8(2), as recently amended, reads in relevant part:
If, after two years of the date that a member is retired under six or seven, the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant. (Emphasis added.)[2]
Prior to the amendment, the statute read in relevant part:
If, as a result of the report of such regional medical panel, the board finds the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement. . . (Emphasis added.)
In the main, therefore, the dispositive inquiry is how to construe the legislature’s substitution of the word “shall" in place of “may.” The City urges the Court to construe the word “shall” as permissive rather than mandatory. That interpretation would, in turn, leave the Police Commissioner some discretion in reinstating involuntary retirees. The suggested interpretation put forth by the City, however, runs counter to a fundamental interpretive principle of statutory construction which posits that the word “shall” is “ordinarily interpreted as having a mandatory or imperative obligation.” See Quincy v. Massachusetts Water Resources Auth., 421 Mass. 463, 468-69 (1995) quoting Hashimi v. Kalil, 388 Mass. 607, 609 (1983); Uglietta v. City Clerk of Somerville, 32 Mass.App.Ct. 742, 744-45 (1992). The general rule does not, however, foreclose the possibility that when read in context with the remainder of the statute and other related legislation, the word “shall” should instead be given permissive qualities. See e.g., Quincy, 421 Mass. at 469 (word “shall” in statute giving the Massachusetts Water Resources Authority the authority to establish sewerage fees given permissive meaning rather then mandatory meaning due to ”temper[ance] by succeeding words”). See also, Boston v. Quincy Mkt. Cold Storage & Warehouse Co., 312 Mass. 638, 646-47 (1942); Barclay v. DeVeau, 11 Mass.App.Ct. 236, 243 (1981). Thus, to garner the proper interpretation of the amendments, this Court must engage in a contextual analysis.
In that vein, this Court is guided by two recent Superior Court cases which have dealt with this same issue. See O’Neill v. Healy, Middlesex Superior Court No. 9701783, 7 Mass. L. Rptr. 370 (Fabricant, J.) (August 5, 1997); White v. City of Boston, Suffolk Superior Court No. 95-64830-F, 7 Mass. L. Rptr. 232 (Fremont-Smith, J.) (July 22, 1997). In those cases, the defendants argued, as the Department does here, that the amendments should be interpreted to leave some discretion to the Commissioner, because the interpretation proposed by Gaughan would be contrary to the context in which the public employee disability retirement statute operates. This argument is bom from a synthesized reading of two well-settled principles of law: (1) when statutes addressing the same matter are inconsistent, courts must construe them harmoniously, Healy v. Commissioner of Pub. Welfare, 414 Mass. 18, 25 (1992); and (2) if a special act and a general act can not be read harmoniously, the general act must yield to the specific, Pereira v. New England LNG Co., 364 Mass. 109, 118 (1973); Boston Teachers Union, Local 66 v. Boston, 382 Mass. 553, 564 (1981). The specific act, St. 1906, c. 291, grants the Police Commissioner plenary authority to appoint applicants to the police force. The general act, the amended c. 32 §8, seemingly removes the Commissioner’s plenary authority with respect to involuntary retirees cleared by the Retirement Board for reinstatement. Applying the principles asserted by the Department, therefore, the specific act, the one granting the Commissioner plenary authority, should override the newly-amended c. 32, §8(2).
The Department’s argument overlooks a critical legal principle that is useful to the resolution of this matter. As noted by Judge Fremont-Smith in White v. City of Boston,
the provisions of a special act generally prevail over conflicting provisions of a subsequently enacted general law . . . however . . . [w]here legislation deals with a subject comprehensively, it ‘may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated.’ [Bloom v. Worcester, 363 Mass. 136, 155 (1973)] Thus, a statute designed to deal uniformly with a statewide problem ‘displays on its face an intent to supersede *53 local and special laws and to repeal inconsistent special statutes.’ Boston Teachers Union, Local 66, 382 Mass. at 564. (Emphasis added).
White, 7 Mass. L. Rptr. at 235. Judge Fremont-Smith recognized, as does this Court, that when promulgated to “deal uniformly with a statewide problem,” a general act must be read to supersede a specific (or “special”) one. Id. The amendments to c. 32, §8, as the Department admits in its memorandum,[3] were promulgated to alleviate the statewide problem of disabled civil servants who have subsequently fully recovered from continuing to receive disability pensions rather than working. Given the foregoing analysis, the newly-amended c. 32, §8(2) must be read to abrogate the Police Commissioner’s plenary authority under St. 1906, c. 291..
In sum, this Court can perceive no indication from the context of the amended c. 32, §8, that the statutory provision is anything but mandatory. Unlike the statute construed in Quincy, the language of c. 32, §8(2) does not contain language that “temper[s]” the mandatory connotation of the word “shall.” See Quincy, 421 Mass. at 469. Moreover, the amended language in c. 32, §8 makes use of the words “shall” and “may.” In some instances, “shall” and “may” even appear in the same paragraph. As the Massachusetts Appeals Court recognized in Uglietta v. City Clerk of Somerville, “the frequent appearance of both ‘may’ and ‘shall’ in various verb phrases [of the same statute] indicates that the latter should be given its usual imperative connotation.” Uglietta, 32 Mass.App.Ct. at 744 citing 2A Sands, Sutherland Statutory Construction s.57.11 (4th ed. 1984).
In a constitutional attack on the foregoing interpretation, the Department argues here, as the defendants did in White and O’Neill,[4] that construing c. 32, §8 to remove plenary hiring authority from the Commissioner gives formerly disabled and retired officers an absolute preference over other candidates, thereby violating Articles 6 and 7 of the Declaration of Rights of the Massachusetts Constitution. See Commissioner of the Metro. Dist. Comm’n v. Director of Civil Servs., 348 Mass. 184 (1964). But as Judge Fremont-Smith stated in White, the interpretation of c. 32, §8(2) removing plenary authority from the Commissioner, “does not give an absolute or automatic preference to one class of officers over another.” While, 7 Mass. L. Rptr. at 235. Rather, that interpretation requires reinstatement of a retiree who “has already been initially hired after being reviewed and found to be qualified, and is to be reappointed only after the [Retirement] Board’s medical panel has certified based upon further examination that he is no longer disabled.” Id. This Court concurs with Judge Fabricant’s reasoning. The removal of the Police Commissioner’s plenary authority does not give involuntary retirees a preference repugnant to the principles of Articles 6 and 7 of the Declaration of Rights.
Furthermore, with respect to public policy, the Department argues here that leaving the Commissioner without discretion would compel the Department to reinstate former officers who have, since their involuntary retirement, engaged in criminal conduct. While compelling, this argument, as it did in O’Neill,[5] also must fail. As Judge Fabricant noted in O’Neill, this argument is properly addressed to the legislature. Id. Moreover, as Gaughan has persuasively argued, nothing bars the Commissioner, on proper grounds, from instituting disciplinary action or termination proceedings against Gaughan once he is reinstated pursuant to c. 32, §8(2).[6]
Finally, the Department asserts that the amended c. 32, §8 should be applied prospectively, and that since the amendments were not effective until November 1996, and Gaughan’s initial application and rejection occurred in 1993-1994, Gaughan’s request for reinstatement should be resolved under c. 32, §8(2)’s old regime. This Court does agree that the amendments to c. 32, §8(2), should be applied prospectively. See City Council of Waltham v. Vinciullo, 364 Mass. 624, 626 (1974) (all statutes are prospective unless an intention that they be retrospective appears by implication from their words, context or objects when considered in light of the subject matter, the preexisting state of the law and the effect upon existing rights, 'remedies and obligations). See also, Hein Werner Corp. v. Jackson Indus., Inc., 364 Mass. 523, 525 (1974); Hanscom v. Malden & Melrose Gas Light Co., 220 Mass. 1, 3 (1914). Furthermore, this Court can discern no intent from the legislature that the amendments apply retroactively. In White, however, under similar facts, the Court held that the retiree’s renewed demand for reinstatement subsequent to the effective date of the amendments was the “functional equivalent of a re-application after the amendment.” White, 7 Mass. L. Rptr. at 235. Like the plaintiff in White, Gaughan renewed his request for reinstatement after the effective date of the amendments. Thus, finding the reasoning in the White case persuasive, this Court holds that Gaughan’s request for reinstatement is governed by the amended c. 32, §8(2).
ORDER
For the foregoing reasons, plaintiffs Motion for Summary Judgment is ALLOWED. The defendant’s Cross Motion for Summary Judgment is DENIED.

This Court recognizes that c. 32, §8(2) makes a distinction between retirees who are subject to reinstatement within two years of their retirement and retirees who are subject to reinstatement more than two years after their retirement. In the former case, the regional medical panel must “determine!] that the retired member is able to perform the essential duties of the position from which he retired.” (Emphasis added). In the latter case, the regional medical panel must “determine!] that the retired member is qualtfiedfor and able to perform the essential duties of the position from which he retired ..." (Emphasis added). The addition of the language “qualified for” *54 in the latter suggests that a retiree subject to reinstatement more than two years after retirement must meet a higher standard than that imposed on a retiree subject to reinstatement within two years of retirement. That distinction, however, is not a determinative factor here; in either case, the plain language of the statute places the obligation of determining whether the retiree is fit for active duty wholly with the regional medical panel.

Def.’s Mem. Supp. Summ. J. at 5.

White, 7 Mass. L. Rptr. at 235; O’Neill, 7 Mass. L. Rptr. at 371.

O’Neill, 7 Mass. L. Rptr. at 372.

The issue of whether the Police Commissioner can initiate disciplinary or termination proceedings under the applicable statutes against a former involuntary retiree who has since been reinstated pursuant to c. 32, §8(2) for conduct committed while the retiree was not on active duty is not before this Court.